West *et al. v.* Rassman *et al.*

Filed Oct. 12, 1893.

———————◆———————

No. 16,980.

## WEST ET AL. *v.* RASSMAN ET AL.

WILL.— *Construction of.*—*Distribution, When Per Stirpes, When Per Capita.*—*Advancements.*—Where the provisions of a will, relating to the manner of distribution of the estate, are: "I will and direct that all my property, both real and personal, shall be distributed in equal portions among the children of the following named persons: * * * * * * I mean and intend that the children of these parties above named, without any regard to numbers, shall be counted as one family, and equally divided amongst them all," the will must be construed to mean that a distribution should be made *per capita* and not *per stirpes;* and the fact that the will directs that money and property advanced to the parents of certain legatees shall be deducted from the legacies of the children of such parents in equal proportion, and that advancements to certain of the legatees shall be deducted from the legacy of each, does not affect the manner of distribution as indicated in the will, except that owing to

West *et al.* v. Rassman *et al.*

such deductions of advancements, there can not strictly be a *per capita* distribution in equal amounts.

SAME.—*Construction of.—Distribution Per Capita, Per Stirpes.*—Where the devise is to several persons belonging to different classes, bearing different degrees of relationship to the testator, and the language of the will leaves the question of distribution in doubt, or the language does not exclude a distribution *per stirpes*, then the will must be construed as intending a distribution *per stirpes* and not *per capita*.

SAME.—*Construction of.—Words in, How Construed.*—Words employed in a will must be given their ordinary meaning, unless there is language in the will which indicates clearly that the testator did not use the words in question in their plain and ordinary sense.

SAME.—"*Children," How Construed.—When Includes Grandchildren, When not.*—The term "children," when used in a will, will be construed in its ordinary and popular signification, and will not be construed to include grandchildren, when there are other persons in existence, at the date of the will or when the bequest or legacy takes effect, answering to such meaning of the term.

From the Marion Circuit Court.

*T. Hanna, W. L. Taylor* and *W. H. Martz,* for appellants.

*A. C. Ayres, A. Q. Jones, T. Curtin, H. H. Haynes, B. K. Elliott, W. F. Elliott, E. F. Ritter, H. L. Ritter, S. M. Ralston, M. Keefe, W. W. Pringle, S. N. Chambers, S. O. Pickens* and *C. W. Moores,* for appellees.

McCABE, C. J.—This was a suit brought by appellee Emil C. Rassman, as the administrator *de bonis non* of William Johnson, deceased, with the will annexed, against appellant and all the other appellees, as defendants, asking for a judicial construction of the last will of said William Johnson, deceased.

After hearing the evidence, the court, at the request of John F. Johnson and others, made a special finding of the facts and stated its conclusions of law thereon, to which some of the parties excepted. The court rendered judgment in accordance with the facts found and conclusions of law; and Mary Jennie West appealed, mak-

ing all the other parties, plaintiffs and defendants, appellees in this court.    Ella Johnson and William H. Myers, infants, by their guardian *ad litem,* Smiley N. Chambers, Ann Cooke, Henry Johnson, Emma Skinner, John F. Johnson, John Hackleman, Mary J. Cayton and James W. Jones, all appellees, and a part of the defendants below, join in the appeal, and the errors assigned by said appellant, namely:

1.  That the court erred in its conclusions of law.

2.  That the court erred in overruling the motion for a new trial.

The second assignment of error is waived by the failure of appellants to discuss it.

The discussion of the first assignment is confined to the conclusions of law affecting the fifth clause of the testator's will.    All other objections to the conclusions of law are therefore waived, rendering it necessary to set out in this opinion only so many of the facts found and conclusions of law as affect said clause in the will.    The court found:

"1.  That heretofore, to wit, on the 5th day of June, 1891, William Johnson died testate, in Marion county, Indiana, leaving no widow or children or their descendants, or father or mother, surviving him, leaving a last will and testament, which has been duly admitted to probate, on the 9th day of June, 1891, in said Marion county; and said Emil C. Rassman has been duly and legally appointed and qualified, and is now acting, as administrator *de bonis non,* with the will annexed, of the estate of said William Johnson, deceased; that the following is a true and exact copy of said will, to wit:    'This 20th day of November, 1883, I, William Johnson, of sound disposing mind and memory, do make and publish this, my last will and testament:    1st. I direct that all my just debts shall be paid.    2d.  I direct that Phœbe

Duncan have a good bed and bedding, also to have the house and the six acres of land in Washington township, Marion county, Indiana, during her lifetime; at her death, I direct that it shall go to her brother John Henry. 3d. I give to my nephew, David R. Johnson, the 160 acres of land on which he lives, in Pike township, Marion county, Indiana.   4th. I give my niece, Fannie M. Gamble, one bed, also three hundred dollars out of her husband's two notes due me, if not paid before my death. If they have been paid, then she is to have that amount out of my estate.   5th. After the above, I will and direct that all of my property, both real and personal, shall be distributed, in equal portions, amongst the children of the following named persons, viz: Susanna Mosier, Margaret Jones, Walter Johnson, Elinor C. Parr, Robert Johnson, Jane Hackleman or Goodrich, Benjamin F. Johnson, James Johnson, Let Snapp, Samuel R. Snapp, James J. Snapp.   Now, I direct that my executor hold one thousand dollars for the support of Polly Ann Johnson, in case that she needs it, having no children.   Susanna Mosier's children are chargeable with, or rather taken, from their respective shares the following, twenty dollars and support, from 1882 until her death, and burial expenses.   In case she outlives me, I direct that my executor see that she is decently buried on my lot in Crown Hill cemetery.   Robert Johnson's children are chargeable with twelve hundred dollars, which I paid for them at different times, with interest from the date of the note I paid for Ben, his son, as surety.   Walter Johnson's children are chargeable with four thousand dollars for the farm in Virginia, and the interest on our article of agreement from the date of it, as the article will show. Benjamin F. Johnson's children are chargeable with three hundred dollars, and interest from October, 1882.   Jane Hackleman's or Goodrich's children are chargeable with

two hundred dollars, interest from 1865. L. N. Snapp's children are to be charged two hundred dollars, and interest from 1857; also any note or notes that I may hold against any of the legatees is to be taken out of their respective shares. ' I constitute and appoint my nephew, David R. Johnson, executor to this, my last will and testament. I mean and intend that the children of these parties, above named, without any regard to numbers, shall be counted as one family, and equally divided amongst them all, as my executor, David R. Johnson, will understand, and if any one is dissatisfied and tries to break this will, shall be cut out of any part in it.

'(Signed) WILLIAM JOHNSON.'

"2. That said William Johnson died seized, in fee simple, of real estate mostly in said Marion county, Indiana, particularly described in the finding, of the aggregate value of $66,875. And, at his death, was possessed of a large amount of personal property, including cash notes and other effects, and that there is now cash in the hands of the administrator, $18,000, the estate being solvent, and by many thousands of dollars above all debts, and the above sum is ready for an order of distribution to the parties entitled thereto, as hereinafter set out.

"3. That Susanna Mosier, Margaret Jones, Jane Hackleman, Elinor C. Parr, Walter Johnson, Robert Johnson, Benjamin F. Johnson and James Johnson, mentioned in said will, were all the sisters and brothers of said William Johnson, testator, and the only brothers and sisters of said testator, and that all of them had died prior to the death of said William Johnson, testator, except Susanna Mosier, who died in July, 1891, and Walter Johnson, who is now living; that L. N. Snapp, Samuel R. Snapp and James J. Snapp, mentioned in said will, were all and the only brothers of the wife of

said William Johnson, testator, and that said wife had no sisters, and all of her said brothers died prior to the death of said William Johnson, testator.

"4. That the following are all the children of said Susanna Mosier, sister of testator, living at the time of the death of said William Johnson, testator, viz.: John J. Mosier, James Mosier, Frederick F. Mosier, Margaret Leonard, Nancy Becknell and Mary Marshall, all of whom are now living; that the following are grand children of said Susanna Mosier, who were living at the time of the death of said William Johnson, testator, viz.: Cora L. Woolworth and Estella J. Smith, being children of Jennie Ives, who died prior to the death of said William Johnson, testator, and who was a daughter of said Susanna Mosier, and that they are all the grandchildren or other descendants of said Susanna Mosier, by her deceased sons and daughters.

"5. That the following are all the children of said Margaret Jones, sister of testator, living at the time of the death of said William Johnson, testator, viz: Nancy J. Cayton and James W. Jones, both of whom are now living; that said Margaret Jones left no other children or other descendants, and said named two children are the only living heirs of said Margaret Jones.

"6. That the following are all the children of Walter Johnson, brother of testator, living at the time of the death of William Johnson, testator, viz: John F. Johnson, Jacob H. Johnson, David R. Johnson, Margaret E. Staubus and Sarah L. Bailey, all of whom are now living. And the following are grandchildren of said Walter Johnson, who were living at the time of the death of said William Johnson, testator, viz: Walter L. Johnson, Isaac Johnson, Victoria Johnson, John Johnson, Katherine Johnson, Charles Johnson, William Johnson, Minnie Johnson and Sarah E. Snapp, all of whom are

children of William J. Johnson, who died prior to the death of said William Johnson, testator, and who was a son of said Walter Johnson, and all of whom are living, and that there are now no other children or other descendants of the deceased sons and daughters of said Walter Johnson living.

"7. That the following are all the children of said Elinor C. Parr, sister of testator, living at the time of the death of said William Johnson, testator, viz: John C. Parr and Margaret Richardson, both of whom are now living; that the following are grandchildren of said Elinor C. Parr, who were living at the time of the death of said William Johnson, testator, viz: Eva Jackson, Elizabeth Seybold, Laura Couch, Charles Parr, Martha Parr and Susan Parr, children of William E. Parr, who died prior to the death of William Johnson, testator, and who was a son of said Elinor C. Parr, all of which said grandchildren are now living; and there are no other descendants of the deceased children of said Elinor C. Parr.

"8. That the following are all the children of said Robert Johnson, brother of testator, living at the time of the death of said William Johnson, testator, viz: Ann Cook, Henry Johnson and Caleb Johnson, all of whom are now living. That the following grandchildren of said Robert Johnson were living at the time of the death of said William Johnson, testator, to wit: Ella Johnson, who is now living and is a child of Jefferson Johnson, who died prior to the death of said William Johnson, testator, and who was a son of said Robert Johnson; and there are no other living descendants of the deceased children of said Robert Johnson.

"9. That the following is the only child of said Jane Hackleman, sister of testator, living at the time of the death of said William Johnson, testator, viz: John W.

Hackleman, and he is now living; and that the following are the grandchildren of said Jane Hackleman, living at the time of the death of said William Johnson, testator, viz: Charles Davis, John C. Sargent, and Fred C. Sargent, all children of Sarah J. Goodrich, who died prior to the time of the death of said William Johnson, testator, and who was a daughter of said Jane Hackleman; and there are no other living descendants of the deceased children of said Jane Hackleman.

"10. That the following are all the children of said Benjamin F. Johnson, brother of testator, who were living at the time of the death of said William Johnson, testator, viz: Mary Jennie West and Emma J. Skinner, both of whom are now living. That the following is the grandchild of said Benjamin F. Johnson, who was living at the time of the death of said William Johnson, testator, viz: Blanch Polson, and she is now living; and there are no other living descendants of the deceased children of said Benjamin F. Johnson. Said Blanch Polson is a daughter of Sarah Frances Polson, who died prior to the death of said testator, and who was a daughter of said Benjamin F. Johnson.

"11. That the following is the only child of said James Johnson, brother of testator, who was living at the time of the death of said William Johnson, testator, viz: John F. Johnson, and that said John F. Johnson is living. That there is no child or other descendant of any deceased child of said James Johnson, now living, nor was there at the time of the death of said William Johnson, testator.

"12. That the following are all the children of said L. N. Snapp, brother of the wife of testator, living at the time of the death of the testator, viz: William B. Snapp, James J. Snapp, Robert B. Snapp, Mary E. Smith, Catharine Virginia Taylor, George A. Snapp,

Julia Ann Booher, all of whom are now living, except Julia Ann Booher, who died since the death of said William Johnson, testator, leaving surviving her Samuel Booher, her husband, but no children or other descendants, nor father or mother surviving her. That the following is a grandchild of said L. N. Snapp, living at the time of the death of said William Johnson, testator, viz: Mary E. Barton, daughter of Jonathan V. Snapp, who died prior to the death of said William Johnson, testator, and who was a son of said L. N. Snapp, deceased. The following are the great grandchildren of said L. N. Snapp, living at the time of the death of said William Johnson, testator, viz: James Snapp, Mitchell Snapp and ———— Snapp, children of William A. Snapp, who died prior to the death of said William Johnson, testator, and who was a son of said Jonathan V. Snapp, all of which said children, grandchildren and great grandchildren are now living, except as in this finding stated, and said grandchild and great grandchildren are all the descendants or heirs of the deceased children of said L. N. Snapp.

"13.  That the following are all the children of said Samuel R. Snapp, brother of testator's wife, living at the time of the death of said William Johnson, testator, viz: Henderson Snapp, W. Benjamin Snapp, Mary Elizabeth Benham, Margaret Jett, Sarah Fleenor, Nancy B. Snapp, Cora Snapp and Samuel G. Snapp; that they are all now living, and that there are no other children, grandchildren or other descendants of any deceased child of said Samuel R. Snapp.

"14.  That the following are all the children of said James J. Snapp, brother of testator's wife, living at the time of the death of said William Johnson, testator, viz: Robert L. Snapp and Margaret V. Snapp, both of whom are now living; that the following grandchildren of said

James J. Snapp were living at the time of the death of said William Johnson, testator, and are now living, viz: William H. Myers, and he is the son of Louisa Myers, who died prior to the death of said William Johnson, testator, and who was a daughter of said James J. Snapp; that there are no other children or other descendants of the deceased children of said James J. Snapp, deceased. The court further finds that the defendant Julia Booher, daughter of said L. N. Snapp, is indebted to said estate, for principal and interest of a note dated March 5, 1891, in the sum of $1,369; that the defendant John C. Parr, son of said Elinor C. Parr, is indebted to said estate, by note dated September 27, 1882, in the sum of $2,006.46, and, also, jointly indebted with another, to said estate, by note, principal and interest, in the sum of $358.62; that the defendant Emma Skinner, daughter of said testator's brother, Benjamin F. Johnson, is indebted to said estate, upon two notes, dated, respectively, June 5, 1890, and August 5, 1890, in the sum of $121; that the defendant Margaret Leonard, daughter of testator's sister, Susanna Mosier, is indebted to said estate, for principal and interest, since July 9, 1890, in the sum of $122, and that it was the intention of testator that each of said amounts thus due the estate should be deducted from any interest said defendant debtors might have in said estate as devisees or legatees under said will.

"25. That the children of said Susanna Mosier, referred to in said will, are chargeable with $700, allowed by the circuit court upon the claim of Lyman B. Leonard, for the care and support of said Susanna Mosier during her last illness; said children are also chargeable with her death and burial expenses, $114.25, also $20 and interest from 1882, amounting to $30.80, also with her support by said testator, as provided in item fifth in said will, in the sum of $1,560, amounting, in all, to $2,-

405.05; that the children of said Robert Johnson, brother of testator, are chargeable with $1,200 and interest from 1870, amounting, in all, to the sum of $2,712.

"27. The court finds the contract referred to in the will as our article of agreement between testator and said Walter Johnson, his brother, by which the court finds it was agreed, on the 5th day of July, 1869, in consideration of $240 to be paid annually to testator by said Walter Johnson, or, in case of his death first, then to testator's wife, S. E. Johnson, during her natural life, testator let to said Walter Johnson his tract of land in Rich Valley, Scott county, Virginia, the said Walter to pay the taxes and to hold, during the natural lives of testator and his wife; the said Walter and his heirs, at the death of the testator, to have said tract of land as a part of their distributive share of the estate of said testator, at the price of $4,000, and if the said distributive share should not amount to this sum, they are to have the tract of land without having to contribute anything to the other heirs of said testator and wife; that the said $4,000, and the interest thereon from the date of said contract up to the death of the testator, amounted to $5,260, and the total amount owing from said Walter to testator, at the date of the testator's death, June 9, 1891, was $6,284.25, and that sum is chargeable against said Walter's children under the clause in said will reading that 'Walter Johnson's children are chargeable with $4,000 for the farm in Virginia, and interest on our article of agreement, as the article will show;' that the children of Benjamin F. Johnson, referred to in said will, are chargeable with $300, and interest from October, 1882, amounting, in all, to the sum of $456; that the children of Jane Hackleman or Goodrich, referred to in the will of said testator, are chargeable with $200, and interest from 1865, amounting to $512; that the children

of L. N. Snapp, referred to in said will, are chargeable with $200, and interest from 1857, amounting to $688.''

The only conclusion of law of which complaint is made in the brief is the second. It is, in substance, as follows:

''*Second.* That the children described in the fifth item of said will of said decedent, who are entitled to take under the same, are such children of Susan Mosier, Margaret Jones, Walter Johnson, Elinor C. Parr, Robert Johnson, Jane Hackleman or Goodrich, Benjamin F. Johnson, James Johnson, L. N. Snapp, Samuel R. Snapp and James Snapp, as were living at the death of said testator, and none others; and that none of the grand-children or other descendants of said persons named in the fifth item of the will, take any portion of said estate; and that, therefore, the only persons entitled to take under said will are the following, namely:'' and then follow the names of the forty persons above set out as legatees, being eighteen of the children of the three Snapps, brothers of testator's wife, by counting Samuel Booher sole heir of one of the Snapp children dying since the testator's death, and twenty-two of the children of the brothers and sisters of the testator, named in the will, and the court concludes, ''that no other persons take any interest in, or part of, said estate under and by virtue of said fifth item of said will, and that all persons so entitled take equally, share and share alike; that the amounts in the special finding of facts found chargeable to the children of Susanna Mosier, collectively, are chargeable to them equally, and the court states the same conclusion as to the charges made collectively against the children of Walter Johnson, Benjamin F. Johnson, Jane Hackleman or Goodrich and L. N. Snapp. And, in addition to the collective charges thus divided among

the individuals of the several children of the persons named, must be added to each individual charge, respectively, any charge hereinbefore found against any of such individual children on account of any notes or claims held by said testator against such individual children.''

It is insisted, with much zeal, learning, and ability on the part of the appellants' attorneys, that this conclusion of law is erroneous because it construes the will so as to require a *per capita* distribution. They contend that the settled rules for the construction of wills require us to hold that the intent and meaning of the testator is, and was, that the distribution should be *per stirpes*, or by the family. Both those who represent portions of the children of some of the persons named in the will, and those who represent grandchildren of some of those persons, agree in this contention, but the attorneys for the grandchildren insist, further, that the will should not only be construed so as to require the distribution to be made *per stirpes*, or by the family, but so as to include the grandchildren as well as the children of the persons named in the will. In this contention, the attorneys for the children are sharply against the counsel for the grandchildren, and join in the contention of the appellee, that no one is entitled to take under the will but the children of the persons named, and no grandchild can take.

It is agreed, on both sides, that the intention of the testator in regard to the distribution must control the decision of the question, and that such intention must be ascertained from the language employed in the will and the surrounding circumstances.

Courts, in construing a will, may look to the circumstances of the testator, the state of his property and of his family, to assist in arriving at the intention. *Jack-*

*son* v. *Hoover,* 26 Ind. 511; *Daugherty,Admr.,* v. *Rogers,* 119 Ind. 254.

In determining the question whether a distribution under a will is to be *per capita* or *per stirpes,* the fact that there are several separate and distinct classes of legatees often exerts an important influence. *Henry* v. *Thomas, Exec.,* 118 Ind. 23; *Wood* v. *Robertson,* 113 Ind. 323.

It is insisted by appellants that there are eleven classes of the legatees, consisting of that many families of children. And it is asserted by counsel that this classification is made so marked in other provisions of the will than the one in controversy as to evince a purpose and intent that the legatees should take by such classes or families. And those other provisions relate to the advancements or charges made against certain legatees.

Most of these charges against all the children of a family were made for and on account of money or property advanced or aid given to the parent of such family of children, and not for money or property advanced to any of such children.

How such charges are to exert an influence in manifesting an intent that the distribution is to be *per stirpes* and not *per capita* is not made quite clear. That an advancement ought to be charged up to the distributees of an estate, arises from the dictates of natural justice, as well as law and equity. However, most of these advancements had not been made to the legatees but to their parents, and presumably resulted in some benefit to the children, if in no other way in benefiting their parents. Where one of these parents had enjoyed a large part of the estate of the testator before his death more than others, justice and equity would require that to be taken into consideration in the distribution of the estate.

It could not be charged to the person receiving it, because he was not a legatee, but his children are legatees. It could not, in justice and equity, be charged to legatees who were not children of the parent receiving the benefit. Therefore, there was only one way it could, in equity and justice, be charged, and that was against the children of the parent receiving the benefit, those children being legatees.

These charges do not arise out of any purpose or intent to distribute the estate *per stirpes* or by the family. Because, if we construe the 'will to mean and intend a distribution *per capita*, these charges must necessarily have been made just as they are, even though the testator intended such a distribution. Again, there are a number of charges for advancements made to different legatees individually, and they are not charged against the family to which the individual belonged, but are charged individually. Such charges do not militate against appellants' contention as appellee supposes, because, if the intent to distribute the estate *per stirpes* be conceded, the dictates of natural justice would require these charges to be made just as they are, against each individual to whom the advancement was made and not to the family of which he is a member.

So we are brought back to the naked language of the will to determine the intent of the testator. When the devise is to several persons belonging to different classes, bearing different degrees of relationship to the testator, and the language of the will leaves the question of distribution in doubt, or the language does not exclude a distribution *per stirpes*, then the will must be construed as intending a distribution *per stirpes* and not *per capita.*    *Henry* v. *Thomas, Exec., supra; Wood* v. *Robertson, supra.*

Strictly speaking, there are two classes of legatees

here, one class the nephews and nieces of the testator, related to him by blood, and the other, the nephews and nieces of testator's wife, not related to him by blood. In such a case, if the language of the will leaves the manner of distribution in doubt or does not exclude the thought of a distribution *per stirpes,* then the will must be construed to intend a distribution *per stirpes.*

The first sentence of the clause in question, namely: "After the above, I will and direct that all my property, both real and personal, shall be distributed in equal portions among the children of the following named persons," etc., while consistent with the thought of a distribution *per capita,* yet alone under the circumstances and in view of the two classes of persons referred to as legatees, and the known rules of construction, might leave the matter of distribution in doubt, and by such rules might require a construction compelling a distribution *per stirpes.* But in the concluding sentence of that item, as if realizing that such doubt might arise, language is used to clear away any such doubt, namely: "I mean and intend that the children of these parties above named, without any regard to numbers, shall be counted as one family, and equally divided amongst them all," etc.

If other parts of the will had made two distinct classes devisees, in that it had provided for a distribution to the children of the testator's brothers and sisters on the one hand, and the children of the brothers of his wife on the other, this clause destroyed that classification, or evinced an intention to disregard it, and direct a distribution to all the children of the testator's brothers and sisters, and all the children of his wife's brothers, precisely the same as if all of said children had been one family. Now, had they all been children of one and the same family, without this clause, all must admit that the rules of construction already alluded to would require the distribution to

be made *per capita*, because there would be nothing for a distribution *per stirpes* to operate upon, there being but one stock, one race or one family, one blood. It is true, as counsel insist, the words "equally divided amongst them all" may apply as well to a division among classes as among individuals. But here the testator, for the purpose of defining his meaning and intention, has made them all one class, one stock, one blood, one family, by language that can not be harmonized with any other construction or interpretation of the will.

Appellants' counsel contend that the language of the concluding clause of item five should be construed to mean that the legatees should be counted as eleven families, instead of one family. This would be doing violence to the plain meaning of the words employed in the will.

Words employed in a will must be given their ordinary meaning, unless there is other language in the will which indicates clearly that the testator did not use the words in question in their plain and ordinary sense. There is no language in this will indicating a purpose to employ the language in question in any other than its ordinary sense. It has been suggested that the charges collectively made against the children of Susanna Mosier, Robert Johnson, Walter Johnson, Jane Hackleman or Goodrich, and L. N. Snapp, being for money and property advanced, not to their children made legatees, but to their parents, and if these collective charges are taken from the shares of the respective sets of children, as the will directs, there can not be a distribution *per capita*, because such children can not receive as large a share to each, as those children against whom no such charge is made in the will, and that, therefore, it must be that the testator intended a distribution *per stirpes*, or by the family.

But this contention encounters the same obstacle as that in favor of a distribution *per capita* in the language of the will, which, stripped of words not necessary to a consideration, reads thus: "I will and direct that all my property, both real and personal, shall be distributed in equal portions among the children of the following named persons. * * * I mean and intend that the children of these parties above named, without any regard to numbers, shall be counted as one family, and equally divided amongst them all."

There must, under this language, be an equal division among either persons, or classes named in the will. The contention for a division among classes, or *per stirpes*, or by the family, is impossible, for the same reason that an equal division among the individual legatees is rendered impossible, namely, if the charges made against some of the families are to be taken from their respective shares, as the same item of the will directs, then families belonging to the same class will not share equally. And we have seen that the words "in equal portions amongst" and "equally divided amongst" may apply as well to a division among classes as among individuals. *Henry* v. *Thomas, Exec., supra.*

We therefore think that the testator could not have intended to apply these words to the different families or classes mentioned in his will. It is true that he charges against the proportion devised to a given family sums advanced to a parent of that family, is, and was not actually received by the children of that parent, but when it is remembered that such parent stands first in relation to the testator, and the children stand in a more remote relation to him, and that it was probably his closer relation to such parent that moved the testator to make the bequest to the children, and that it would not be just, as between the several families, that advancements to a par-

ent thereof should be disregarded, it was the privilege, and, we think, the manifest intention of the testator, to make the distribution *per capita*, charging against the children of any family, in equal proportions, the sums advanced to their parent, to be deducted from their shares respectively.

While this is not, logically, an equal distribution *per capita*, there is no reason and no rule precluding the testator from making the provision which we find he intended to make.

If we treat the sums advanced to the parent of the family as so much advanced to and equally divided amongst the children of that family, as was evidently the testator's intention, there is no obstacle in the way of declaring the intent to make a *per capita* distribution among the legatees. The intention of the testator, when it is not inconsistent with the law, and possible to be effectuated, must be followed by the court in construing the will. And, though that intention, as we have seen, is not logically and strictly a *per capita* or a *per stirpes* distribution, but partakes somewhat of both sorts of distribution, yet the intention of the testator must prevail.

We think the court below correctly concluded that the distribution should be made equal amongst the forty legatees, deducting from each share the charges the court found against each legatee.

It is insisted, on behalf of the grandchildren of the persons named in the will, that the word "children," used in the will, ought to be construed to include and embrace the grandchildren of the persons named, and that they shall share in the distribution of the estate as legatees.

This court has held that "The technical legal import of the word 'children' accords with its ordinary and popular signification, and that it does not include grand-

children where there are any persons in existence, at the date of the will or when the bequest or legacy takes effect, answering such meaning of the term; and that in such case the word children will never denote or signify grandchildren." *Cummings* v. *Plummer*, 94 Ind. 403; *Pugh* v. *Pugh*, 105 Ind. 552; 3 Am. and Eng. Encyc. of Law, 230, 231, and authorities there cited.

Therefore, we are of opinion that the circuit court did not err in its conclusions of law.

The judgment is affirmed.

