Smith *v.* Smith.

SMITH   *v.*   SMITH.

(*Knoxville.*   September   21,   1901.)

WILL.   *Devise in remainder to a son and his children construed.*

Under devise of a farm to testator's widow for life, with remain-
der to his "son, Samuel F., and his heirs, equal shares," the
children of the son, Samuel F., living at the death of the
widow, including those born after testator's death, take equal
shares each with their father in the property. "Heirs" means
"children" in this will, and is a word of purchase and not of
limitation.

Cases cited: Rogers *v.* Cawood, 1 Swan, 143; Grimes *v.* Orrand, 2
Heis., 298; Read *v.* Fite, 8 Hum., 327; Franklin *v.* Franklin, 91
Tenn., 120; Boyd *v.* Robinson, 93 Tenn., 1; Cowan *v.* Wells, 5
Lea, 682; Bridgewater *v.* Gordon, 2 Sneed, 5; Puryear *v.* Ed-
mondson, 4 Heis., 43; Bowers *v.* Bowers, 4 Heis., 294; Satter-
field *v.* Mayes, 11 Hum., 58.

FROM   WASHINGTON.

Appeal   from   the   Chancery   Court   of   Washington
County.   ROBERT   BURROWS,   Spl.   Ch.

A.   R.   JOHNSON   for   complainants.

H.   H.   CARR   and   T.   A.   CARR   for   defendants.

Smith *v.* Smith.

BEARD, J. This case involves the construction of the following clause in the will of the late John T. Smith, to-wit.: "I will and bequeath to my beloved wife . . . all my real estate . . . after the payment of my just debts."

"After the death of my wife . . . I will and bequeath to my son, Samuel F. Smith, and his heirs, equal shares in my home farm . . . . ."

The testator left surviving him a widow and his son, Samuel F. Smith, who, at the death of the testator, had several living children. Between the date of the testator's death, and the death of his widow, other children were born to Samuel. These children were all alive at the death of the life tenant, as well as at the time of the filing of the present bill.

Upon the record, the first question presented for determination is, what interest did Samuel F. Smith take under the will. The contention is that he took the entire remainder interest in the property, upon the theory that a devise to "A. and his heirs," is, in law, a devise to A. While it is true that the word "heirs," when used in relation to a disposition of real estate, is ordinarily a word of limitation, yet it frequently is held, from the context, to be a word of purchase. Many illustrations ' of such use of the word are found in our cases. Among them are:

*Rogers* v. *Cawood,* 1 Swan., 143; *Grimes* v. *Or-rand,* 2 Heisk., 298; *Read* v. *Fite,* 8 Hump., 327; *Franklin* v. *Franklin,* 91 Tenn., 120; *Boyd* v. *Robinson,* 93 Tenn., 1; *Cowan* v. *Wells,* 5 Lea, 682.

We think it clear that the testator in this will used the words "heirs" in the sense of "children." He gives to his son Samuel and "his heirs" the property, and to place beyond doubt that the parties thus named as beneficiaries in common with the son, were the children of the son, the provision is added that "they are to take equal shares." This is the view adopted by the Court of Chancery Appeals, and in it we concur.

The second question is, conceding that the children share with the father in the property devised, then which of these so share? It is insisted that only those children living at the death of the testator take under the will, to the exclusion of those born after his death, and prior to that of the life tenant. The Court of Chancery Appeals sustained this insistence.

It will be observed that the word "heirs" is used by the testator without limitation. He does not create an estate in remainder in his son, Samuel, and those of his heirs or children who may be in existence at the time of the testator's death, to the exclusion of such as might come into being thereafter. The clause is broad enough to include all heirs (children) born to Samuel at

the date of the will, or that might be born to him at any future time prior to the falling in of the life estate.

Nor does the will anywhere indicate any reason why the testator should desire to bestow his bounty upon a part, rather than upon all of the children of his son. That his grandchildren were, equally with his son, the objects of his affectionate consideration, is manifest by the provision that each one of them should have a share equal to that of his son.

In view of this, we think it would work injustice and at the same time do violence to the intention of the testator, to restrict this provision to the children of Samuel, living at the death of the testator, and thus exclude from its benefits the after born children. Nor do we think that this is made necessary by any established rule of construction.

We agree that the law favors the vesting of estates at the earliest possible moment, and that the rule announced in *Bridgewater* v. *Gordon,* 2 Sneed, 5, and *Puryear* v. *Edmondson,* 4 Heisk., 43, governs this case, rather than that laid down in *Satterfield* v. *Mayes,* 11 Hump., 58. The devise in question is of a severable interest to the son Samuel, and it may be regarded as settled that where there is anything in the will indicating an intention on the part of the testator that "one or more individuals of the desig-

nated class shall enjoy a several interest," this is sufficient to give all of the class a vested and transmissable interest. *Whiteman* v. *Young,* 1 Tenn., Ch. 586.

And it is also true, that while those of the class in being, when the instrument creating the remainder estate goes into effect, take such interest, yet it is also true that this interest is diminished in value by the opening up of the remainder to take in persons born into the class after that date. The rule is thus stated by Chancellor Kent: "Where a remainder is limited to the use of several persons, who do not all become capable at the same time, as a devise to A, remainder to his children, the children living at the death of the testator take vested remainders, subject to be disturbed by after born children. The remainder vests in the persons first becoming capable, and the estate opens and becomes divested in quantity by the birth of subsequent children, who are let in to take vested proportions of the estate." 4 Kent, 205. Our own cases are in accord.

While this is conceded by the Court of Chancery Appeals to be the general rule, it is assumed that it cannot apply in the present case because of the fact that the testator's son constitutes one of the class of remaindermen, and that the direction for the devolution of this estate in "equal shares" indicates a purpose to give

Smith *v.* Smith.

it to this son and to certain other persons in the testator's mind at the making of the will, and precludes the subsequent admission of other persons by the opening of the remainder, and thus cutting down the estate of the son.

But we have already seen that the son takes no advantage under this will superior to that accorded his children. He is given no preferential right. He stands on no higher plane. He is simply one of the objects of the testator's concern and bounty—his children being the other. This being so, the fact that his interest will be cut down, furnishes no more reason why the general rule should not be applied, than the fact that the several interests of the children living at the death of the testator, will be equally affected. These latter we think will have no right to complain. They are not specially designated as the only children of their father to share in the provision of the will. If the testator had intended to provide for them, and exclude others thereafter born, it was a simple matter to have so said. But the testator did not so limit his devise. The terms are broad enough to include all, and it is not for the Courts to reject the general rule and work injustice, in the absence of some intimation on the face of the will that a narrower rule was in the mind of the testator.

In *Bowers* v. *Bowers,* 4 Heisk., 294, the clause in the will for construction was as follows: "I

bequeath to my daughter . . . the following property, viz.: (describing a tract of land and several slaves), to have and to hold the same to her and her children. . . ."
While the estate here devised was not one in remainder, yet the rule applicable to such an estate was held to control, and the provision for the children of the daughter was construed to embrace all alike—"those to be afterwards born as well as those then in being." The Court said: "It is well settled by numerous English authorities that upon an ordinary limitation, by way of remainder to children, in a class, all who are *in esse* at the time of the testator's death, take vested transmissable interests immediately upon the testator's death, and all who come *in esse* before the particular estate ends . . . are to be let in. . . ."

It will be seen that the Court did not hesitate to make application of this general rule to the estate in question, though its effect was to diminish the share of the mother by the birth of children subsequent to the death of the testator, and no more, do we think, should there be hesitancy in the present case, because the admission of the after-born children will serve to cut down the share of the testator's son in the remainder estate.

In holding otherwise the Court of Chancery

Appeals was in error, and its decree in this re-
spect is reversed.

The record disclosing that certain of the parties
to this cause have parted with their interests in
the land in controversy, and that it has been
sold under interlocutory orders, entered by the
Chancery Court, the cause will be remanded to
that Court in order that distribution may be made
as the interest of the respective parties may ap-
pear.

The cost of the Chancery Court will be paid
out of the fund, and of this Court, by those
parties and their sureties who have prosecuted re-
spectively an unsuccessful appeal and writ of
error.