# LAISURE ET AL. v. RICHARDS ET AL.

[No. 8,364.    Filed December 9, 1913.    Rehearing denied February 26, 1914.    Transfer denied May 20, 1914.]

1. WILLS.—Construction.—Meaning of Words.—"Share and Share Alike".—While the use of the words "share and share alike" in a will indicates that the testator intended a per capita distribution, such words may be applied to a division between classes as well as to a division among individuals. p. 307.

2. WILLS. — Construction. — Meaning of Words. — "Between". — Though etymologically the word "between" indicates only two and indicates that no more than two persons or classes are set against each other, the word, when used in a will, may be given the meaning of the word "among". p. 308.

3. WILLS.—Construction.—Intention of Testator.—Where a will is silent as to the intention of the testator, and stands as the mere expression of a will, effect must be given to it according to those rules, which, from long acquiescence, have acquired the force of authority. p. 308.

4. WILLS.—Construction.—Meaning of Words.—Technical words used in a will should be given their legal effect, unless subsequent inconsistent words are used. p. 309.

5. WILLS.—Construction.—Method of Distribution.—Under a devise to several persons of different classes, bearing different degrees of relationship to the testator, where the language leaves the question of distribution in doubt, or does not exclude a distribution per stirpes, a distribution per stirpes will be deemed to have been intended. p. 309.

6. WILLS.—Construction.—Method of Distribution.—As a general rule, under a devise to heirs without naming them, the devisees take in the proportion prescribed by the statute, and, if not of equal degree, they take per stirpes in case the will is doubtful or contains no expression to the contrary. p. 309.

7. WILLS.—Construction.—Method of Distribution.—Under a devise to the children of several persons, or to a person standing in a certain relation to the testator and the children of another person standing in the same relation, the distribution will be per

*capita,* but such construction will give way to a very faint glimpse of a different intention on the part of the testator. p. 309.

8. WILLS.—*Construction.—Method of Distribution.*—When an estate is devised to be divided equally between certain persons, the language imports the taking of an equal share by each devisee, in the absence of other provisions showing a contrary intention. p. 310.

9. WILLS.—*Construction.—Method of Distribution.*—Where a class is named as devisees, all of that class share equally. p. 310.

10. WILLS. — *Construction. — Method of Distribution.* — Where the general scheme of a will, and specific provisions thereof, show an intention to regard the legatees as a class, such interpretation will control, notwithstanding a clause of a particular bequest when taken alone would be construed as a bequest to the persons named as individuals. p. 310.

11. WILLS. — *Construction. — Method of Distribution.* — "*Gift to a Class*".—A "gift to a class" is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, who are to be ascertained at a future time and are to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons. p. 311.

12. WILLS.—*Construction.—Persons Entitled to Take.—Method of Distribution.*—Where testator, leaving no children or descendants of any child, devised his property to his wife for life, and declared that at her death all the real estate should be divided "share and share alike" between the nearest blood relation he might have living at that time and the nearest blood relation of his wife living at that time, except that in case of his wife's remarriage and leaving children of such marriage such children should have the fee to all the real estate, two classes of blood relations were thereby created, one consisting of testator's blood relations, and the other of the blood relations of his wife, and each class took half on the death of testator's wife without issue by a subsequent marriage. pp. 311, 313.

13. WILLS.—*Construction.—Intention of Testator.*—In construing a will the court must first seek the intention of the testator, and such intention, if ascertainable, will prevail. p. 312.

14. WILLS.—*Construction.—Intention of Testator.*—In ascertaining the intention of a testator effect should be given to every word of the testamentary clause under consideration, if possible to do so by a reasonable construction not inconsistent with the testator's manifest intent as disclosed by a consideration of the whole will. p. 312.

From Howard Circuit Court; *William C. Purdum,* Judge.

Action by Mary A. Laisure and others against Robert O. Richards for partition, in which defendant filed a cross-complaint. From the judgment rendered, certain of the plaintiffs appeal. *Affirmed.*

*Blacklidge, Wolf & Barnes,* for appellants.
*Bell, Kirkpatrick & Voorhis,* for appellees.

HOTTEL, P. J.—In this case the issues of fact determined by the judgment of the trial court were presented by a complaint and a cross-complaint and a general denial to each.

The complaint was filed by the appellants Mary A. Laisure, Abner H. Ratcliff and Silas G. Ratcliff and the cross-complaint by appellee Robert O. Richards. Both the complaint and the cross-complaint sought to partition and quiet title to the same real estate, particularly described in each pleading, and such pleadings contained substantially the same averments, the difference between them being that the complaint alleged that appellants and cross-complainant each owned an undivided one-fourth in value of the real estate and, that cross-complainant and his coappellees were claiming and asserting some right and title adverse to that of appellants, while the cross-complaint averred that cross-complainant was the owner of an undivided one-half in value of the real estate, and that appellants were the owners of the other half, and that appellants and cross-complainant's coappellees were asserting and claiming some right or title adverse to that of cross-complainant.

Appellants and appellees are respectively claiming title to said real estate under the will of Gilbert Ratcliff, deceased, a copy of which is set out in both the complaint and cross-complaint. This will contains five items, the last four of which are as follows:

"Item 2. I give and devise to my beloved wife, Clara F. E. Ratcliff, all the real estate of which I may die the owner, she to have and hold the same for and during her natural life, and it is my will and I direct that my

said wife shall not sign any note nor go security in any way and that her signature to any note or mortgage of any kind shall not hold against any property I now own. Item 3. I will and devise that, at the death of my beloved wife, Clara F. E. Ratcliff, that all my said real estate be divided, share and share alike, between the nearest blood relation I may have living at that time and the nearest blood relation of my beloved wife at the time of her death; provided, that should my beloved wife remarry and bear a child or children, then, in that case, it is my will that the said child or children of my said wife shall have and hold the fee of all my said real estate. Item 4. I will and bequeath all my personal property to my beloved wife, Clara F. E. Ratcliff, of which I may die·the owner, she to have the use, profits and income thereof to use and enjoy the same for her support and maintenance, and to sell and dispose of said personal property for that purpose. I suggest, however, that should any of said personal property remain intact or undisposed of at the time of her death that the same go, share and share alike, as provided for my real estate. Item 5. I further direct that my beloved wife, Clara F. E. Ratcliff, act as Executrix of this My Last Will and that she act in that capacity without the execution of a bond or the filing of an inventory, as the law in such cases provides.''

A trial by the court resulted in a finding and judgment in favor of appellee, Robert O. Richards, adjudging him to be the owner of an undivided half of such real estate and appellants the owner of the other half, viz., that each appellant owned an undivided one-sixth thereof. A sale of the land and a distribution of the proceeds derived from such sale among the respective owners in accord with such finding was ordered and adjudged. A motion to modify the judgment and a motion for a new trial filed by appellants were each overruled. Exceptions were properly saved to such rulings and are assigned and relied on as error. Another assignment of error questions the sufficiency of the cross-complaint.

Gilbert O. Ratcliff died on March 31, 1909, the owner of the real estate in controversy, and left surviving him his

widow, Clara F. E. Ratcliff, who afterwards intermarried with Joseph E. Sims, one of the appellees. Gilbert O. Ratcliff left no child, nor descendants of any child, surviving him and no father or mother, but left surviving him as his nearest blood relation his sister Mary A. Laisure, and his two brothers, Abner H. and Silas G. Ratcliff, the appellants herein. No children were born to Clara F. E. Sims after her marriage with Sims, and she left surviving her no child, and no descendants of any child, and no mother, but left surviving her as her nearest blood relation, her father Robert O. Richards, appellee and cross-complainant. Hence it appears that the appellants are the nearest blood relation of the testator who survived him and his widow, and appellee Robert O. Richards is the nearest blood relation of the widow of such testator who survived her.

The several errors assigned present in different form one and the same question, the determination of which necessarily depends on the construction to be given to the will, particularly the third item thereof. It is due to counsel on either side of the case to say that our labors in the investigation of such question have been greatly lessened by their respective briefs, each of which evidences much research and an exhaustive effort to collect all the althorities which throw any light on the subject. It is contended by appellants, in effect, that, by said item of his will, such testator provided "for a *per capita* and not a *per stirpes*" distribution among one class only, viz., the testator's *"nearest relation both by blood and by marriage with Clara F. E. Ratcliff."* In support of this contention appellants, in their brief, have collected and cited many cases in which the *per capita* rule of distribution has been applied and discussed, which we also cite as throwing light on such question. *Henry* v. *Thomas* (1889), 118 Ind. 23, 20 N. E. 519; *Rohrer* v. *Burris* (1901), 27 Ind. App. 344, 61 N. E. 202; *Kling* v. *Schnellbecker* (1899), 107 Iowa 636, 78 N. W. 673; *Camp-*

*bell* v. *Clark* (1887), 64 N. H. 328, 10 Atl. 702; *Pitney* v. *Brown* (1867), 44 Ill. 363, 365; *McIntire* v. *McIntire* (1904), 192 U. S. 116, 24 Sup. Ct. 196, 48 L. Ed. 369; *Bisson* v. *West Shore R. Co.* (1894), 143 N. Y. 125, 38 N. E. 104; *DeLaurencel* v. *DeBoom* (1885), 67 Cal. 362, 7 Pac. 758; *McFatridge* v. *Holtzclaw* (1893), 94 Ky. 352, 22 S. W. 439; *Maddox* v. *State* (1819), 4 Har. & J. (Md.) 539; *Budd* v. *Haines* (1894), 52 N. J. Eq. 488, 29 Atl. 170; *Johnston* v. *Knight* (1895), 117 N. C. 122, 23 S. E. 92; *Smith* v. *Smith* (1901), 108 Tenn. 21, 64 S. W. 483; *Edwards* v. *Kelley* (1903), 83 Miss. 144, 35 South. 418; *Mooney* v. *Purpus* (1904), 70 Ohio St. 57, 70 N. E. 894; *Walker* v. *Webster* (1897), 95 Va. 377, 28 S. E. 570; *Ramsey* v. *Stephenson* (1899), 34 Or. 408, 56 Pac. 520, 57 Pac. 195; *Richards* v. *Miller* (1872), 62 Ill. 417. Appellee Robert O. Richards, on the other hand, contends that the testator by his will, evidenced an intention to provide for a *per stirpes* rather than a *per capita* distribution; that two classes of devisees are mentioned and contemplated in the third item of the will, viz., the nearest blood relation of the testator, and the nearest blood relation of his wife, and to support his contention cites the following cases: *Wood* v. *Robertson* (1888), 113 Ind. 323, 15 N. E. 457; *West* v. *Rassman* (1893), 135 Ind. 278, 292, 34 N. E. 991; *Ferrer* v. *Pyne* (1880), 81 N. Y. 281; *In re Hoffman's Will* (1911), 201 N. Y. 247, 94 N. E. 990; *In re King's Estate* (1910), 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945, 21 Ann Cas. 412; *Ross* v. *Kiger* (1896), 42 W. Va. 402, 26 S. E. 193; *Young's Appeal* (1876), 83 Pa. St. 59; *Bassett* v. *Granger* (1868), 100 Mass. 348; *Knutson* v. *Vidders* (1905), 126 Iowa 511, 102 N. W. 433; *Holbrook* v. *Harrington* (1860), 82 Mass. 102; *Wintermute* v. *Snyder's Exr.* (1836), 3 N. J. Eq. 489; *McClean* v. *Williams* (1902), 116 Ga. 257, 42 S. E. 485, 59 L. R. A. 125; *Osborn's Appeal* (1883), 104 Pa. St. 637; *Rivenett* v. *Bourquin* (1884), 53 Mich. 10, 18 N. W. 537; *In re Swinburn* (1888), 16 R. I. 208, 14 Atl. 850, 853;

*Appeal of Alston* (1887), 11 Atl. (Pa.) 366; *Hall* v. *Hall* (1885), 140 Mass. 267, 2 N. E. 700; *Coats* v. *Burton* (1906), 191 Mass. 180, 77 N. E. 311; *Jackson* v. *Luquere* (1825), 5 Cow. (N. Y.) 221; *Bool* v. *Mix* (1837), 17 Wend. (N. Y.) 119, 34 Am. Dec. 285; *Raymond* v. *Hillhouse* (1878), 45 Conn. 467, 29 Am. Rep. 688; *Balcom* v. *Haynes* (1867), 96 Mass. 204; *Allen* v. *Bordman* (1906), 193 Mass. 284, 79 N. E. 260, 118 Am. St. 497; *McClench* v. *Waldron* (1910), 204 Mass. 554, 91 N. E. 126; *Stoutenburgh* v. *Moore* (1883), 17 Cent. L. J. (N. J. Eq.) 312, 314; *Kelley* v. *Vigas* (1884), 112 Ill. 242, 54 Am. Rep. 235; *Silsby* v. *Sawyer* (1888), 64 N. H. 580, 15 Atl. 601; *Farley* v. *Farley* (1908), 121 Tenn. 324, 115 S. W. 921; *Walker* v. *Griffin's Heirs* (1826), 11 Wheat. (U. S.) \*375, 6 L. Ed. 498; *Record* v. *Fields* (1900), 155 Mo. 314, 55 S. W. 1021; *Mayer* v. *Hover* (1888), 81 Ga. 308, 7 S. E. 562.

Appellants attach importance to the use of the words "share and share alike" and insist that their use indicates that the testator intended a *per capita* distribution of his estate. It may be admitted that such contention is supported by authority. *Stephenson* v. *Leslie* (1877), 70 N. Y. 512; *Howell* v. *Knight* (1888), 100 N. C. 254, 6 S. E. 721; *Everitt* v. *Everitt* (1864), 29 N. Y. 39, 93; *Dukes* v. *Faulk* (1892), 37 S. C. 255, 16 S. E. 122, 34 Am. St. 745; *Collins* v. *Hoxie* (1841), 9 Paige Ch. (N. Y.) \*81. In answer to this contention, appellee Robert O. Richards asserts that such words may be applied to a division between classes as well as to a division among individuals and such assertion is borne out by the authorities which he cites. *Record* v. *Fields, supra; In re King's Estate, supra; Stoutenburgh* v. *Moore, supra; Wood* v. *Robertson, supra; Osborn's Appeal, supra; Rivenett* v. *Bourquin, supra; In re Swinburn, supra; Appeal of Alston, supra; Hall* v. *Hall, supra; Coats* v. *Burton, supra; Jackson* v. *Luquere, supra; Bool* v. *Mix, supra; Balcom* v. *Haynes, supra; Allen* v. *Bordman, supra; McClench* v. *Waldron, supra.* In this con-

nection appellee Robert O. Richards further con-
2.    tends, in effect, that the word *"between"* etymolog-
ically indicates only two, and imports that no more
than two persons or classes are set against each other, and
that the word "among" would have been the natural and
appropriate word to have been used by the testator in this
case if he had intended a division among the individuals
of one class instead of a division between the two classes.
While the word "between" has the etymological meaning
given to it by appellee, many of the authorities herein cited
recognize that it may be and frequently is used in the same
sense as *"among"*. *Kling* v. *Schnellbecker, supra; Haskell*
v. *Sargent* (1873), 113 Mass. 343.

No good purpose can be served by a review of the numer-
ous cases cited by appellants and appellee Robert O. Rich-
ards, and by undertaking to distinguish the facts to which
the respective rules of construction herein contended for
have been applied, or by indicating the similarity or dis-
similarity of the words used in the instant case with the
words used in such particular cases to indicate the distribu-
tion intended. Such an effort would only emphasize the
appropriateness and truth of the statement of the court in
*Wood* v. *Bullard* (1890), 151 Mass. 324, 333, 25 N. E. 67,
7 L. R. A. 304, that: "the reasoning of the cases is often
very refined and subtle, and involves a consideration of
minute differences of language; and the final determination
of each case must after all, *depend upon the intention, to
be gathered from all of the language used by the particular
testator whose will is before the court."* (Our italics.) It
may be of importance, however, to indicate some of the
general rules of construction recognized and expressed in
those cases as being influential in determining the distribu-
tion that should be adopted where the testator has left un-
certain his intent in such respect. "If the instru-
3.    ment is silent as to intention and stands as a mere
expression of a will, effect must be given to it accord-

ing to those rules, which, from long acquiescence, have acquired the force of authority." *Bisson* v. *West*

4. *Shore R. Co., supra.* "When technical words are used, they should have their legal effect, unless subsequent inconsistent words are used." *Dukes* v.

5. *Faulk, supra,* 260. When the devise is to several persons belonging to different classes, bearing different degrees of relationship to the testator, and the language of the will leaves the question of distribution in doubt, or the language does not exclude a distribution *per stirpes,* then the will must be construed as intending a distribution *per stirpes* and not *per capita. Henry* v. *Thomas, supra; Wood* v. *Robertson, supra; West* v. *Rassman, supra.*

As a general rule "a devise to heirs, without naming them, which therefore necessarily compels a reference to the statute of distribution to ascertain who shall take

6. under the will, the devisees will take in the proportion prescribed by the statute, and, if not of equal degree, they will take by right of representation, or *per stirpes,* and not *per capita,* in the absence of a declaration in the will to the contrary, or in case the intention of the testator is in doubt. * * * This rule is founded on the presumption that the testator, having made a resort to the statute necessary to ascertain who are his beneficiaries, intended that it should also govern the proportion in which they should take, unless he expressed a different intention." *Ramsey* v. *Stephenson, supra,* 409.

"By a gift either to the children of several persons, or to a person described as standing in a certain relation to the testator and the children of another person stand-

7. ing in the same relation, the objects of the gift take *per capita* and not *per stirpes;* and therefore in the latter case each child of the second person takes a share equal to the share of the first person. But this, like some other general rules for the construction of wills, has perhaps been adopted and adhered to by the courts rather from the impor-

tance of having some rule of interpreting phrases so frequently used by testators, than from any strong and preponderating reason in its favor. And the authorities fully support the statement of Mr. Jarman that 'this mode of construction will yield to a very faint glimpse of a different intention in the context.' 2 Jarman, Wills (4th Am. ed.) [111], [112], and notes." *Balcom* v. *Haynes, supra,* 205.

8. "When an estate is devised to be divided equally between certain persons * * * the language imports the taking of an equal share by each legatee, in the absence of other provisions showing a contrary intention." *Kling* v. *Schnellbecker, supra.* In the case of *Osborn's Appeal, supra,* the court in discussing the *per capita* rule of distribution, at page 642, says: "The foundation of the *per capita* rule of distribution rests in a large measure on the presumption, that when the beneficiaries are in equal degrees of relationship to the testator his affection for each is equal, and therefore he will desire to benefit each equally. * * * It is contended by the appellants that the general rule is, when a devise or bequest is made to a person described as standing in a certain relation to the testator, and the children of another person standing in the same relation, that they all take *per capita.* The rule is so declared in 2 Jar. on Wills 756; but on the next page it is said 'this mode of construction will yield to a very faint glimpse of a different intention in the context'." "Where

9. a class is named as devisees, all of that class shall share, and shall share equally." *DeLaurencel* v. *DeBoom, supra.* Where the general scheme of the will and certain specific provisions thereof, indicate

10. an intent to regard the legatees as a class rather than individuals, such interpretation controls, although the clause containing a particular bequest when taken alone would be construed as a bequest to the persons named as individuals. *Hoppock* v. *Tucker* (1874), 59 N. Y. 202; *In re King's Estate, supra.* "A gift to a class is a gift of an

aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons.' (1 Jarman, Wills [5th ed.] 269''; *In re Kimberly's Estate* (1896), 150 N. Y. 90, 44 N. E. 945; *In re King's Estate, supra.*

Appellants contend, in effect, that the above rules, as well as the authorities cited by appellee Robert O. Richards (the cases of *Bassett* v. *Granger, supra,* and *Young's Appeal, supra,* excepted) all indicate that the *per stirpes* rule of distribution is adopted in those cases only where either, because of the absence of specific direction by the testator, resort to the statute of descent and distribution is made necessary in order to ascertain who shall take under the will, or in those cases where the language used by the testator, is such as to indicate that he intended a distribution in accordance with the statute of descents, and that, even where the testator uses the statutory word *heirs,* such rule is invoked only in those cases where the legatees stand in different degrees of relationship to the testator; that in the case under consideration, the words used by the testator clearly exclude the word heirs or any idea whatever of representation. We think it may be conceded that appellants are correct in their contention that the *per stirpes* rule of construction is generally applied in the character of cases indicated by them. This is necessarily true because ordinarily the reason or necessity for its application has arisen only in those cases where the legatees stood in different degrees of relationship to the testator. We think it may also be conceded that the testator, in the will in question, excludes the idea of heirship or representation. The words ''nearest blood relation'' in and of themselves and without reference to any other words of the will, necessarily exclude such idea; but these words are twice used by the

testator, and used in a connection and a sense that to our minds clearly indicate that the testator had in mind two classes of relation, or in other words two strains of blood, viz., his own "nearest blood relation" and his wife's "nearest blood relation", and, by the use of such words the testator clearly indicated a *per capita* division of the half of the real estate among the individuals constituting "the nearest blood relation" of each class.

The fact that such words were used, and that by their use the testator excluded the idea of heirship or representation in the division of his property between the individuals constituting the separate classes, or families, thereby necessitating a *per capita* division among the relation of such respective families, does, not, in our judgment mitigate against, or stand in the way of a construction that recognizes an intention on the part of the testator to distribute his real estate between the two classes or families mentioned. In other words, it seems to us that importance has been attached to the *per stirpes* and *per capita* rules of distribution when the real question in the case is whether the testator had in mind, when he made the distribution in the item of his will, the "nearest blood relation" of two classes or only the individuals of his "nearest relations" by blood and by marriage, and whether he intended a distribution between the two classes or among the individuals of such classes as though they were of one class. Hence, the importance of the definition of a gift to a class, and the rule governing in such cases above set out.

In connection with the rules before set out it should be remembered that the first and most important rule in the interpretation of a will is to seek for the intention of the testator. When that intention can be ascertained from the will itself, and is inconsistent with such rules, the testator's intention must prevail. *Osborn's Appeal, supra.* "Analagous decisions are of importance only as aids in ascertaining such intention, when

it is doubtful." *Ramsey* v. *Stephenson, supra,* 409. "In thus ascertaining the intention of the testator, effect must be given to every word of the testamentary clause under consideration, without rejecting any of them, if this can be done by a reasonable construction, not inconsistent with the manifest intent and purpose of said testator, apparent from the whole will taken together." *Mooney* v. *Purpus, supra,* 64.

Keeping in mind the definition of what is meant by a distribution by classes before indicated and the usual and ordinary meaning of the words used by the testator in making the distribution here involved, we now inquire what was the intent of this testator as evidenced by his will in its entirety. It seems to us that but one answer can be made to this question, viz., that the testator had in mind two classes, his "nearest blood relation" and his wife's "nearest blood relation", and that he desired an equal division, a "share and share alike" division "between" these two classes. The words used to make the distribution and their arrangement and position with reference to each other all indicate such an intention. As before indicated, the word "between" etymologically signifies a distribution between two persons or classes, and this etymological meaning is emphasized by the use of the word "relation" in the singular which indicates a class rather than the individuals of a class, which, if intended, by the testator would have been more certainly and appropriately indicated by the word relations or relatives.

As before stated in this opinion, the words "share and share alike" may be appropriately used when a division by classes is intended. The fact that such words are immediately followed by the word "between", which is, in turn, followed by the word *"relation"*, indicating a class rather than individuals, to our mind necessitates the conclusion that such words were so used in the instant case. Not only do the particular words of distribution indicate such intent

of the testator, but this intent is further evidenced, we think, by the remainder of the will, especially the remaining part of item three which provides: "that should my beloved wife remarry and bear a child or children, then in that case it is my will that the said child or children of my said wife shall have and hold the fee of all my said real estate." This language evidences a recognition of the rights of the wife in said real estate that cannot be ignored in the construction of this will.

Taking the will in its entirety it seems to us that the testator clearly recognized that, if the wife should have issue born unto her, though not of his blood, that, being her blood, they should have all of such real estate, and that in the absence of such issue, the wife's "nearest blood relation" and his own "nearest blood relation" should be on an equality in the distribution of what remained of his property at her death. The fact that he excluded the idea of distribution by heirship and representation only furnishes additional reason for our conclusion, because by such exclusion he made it possible for only the "nearest blood relation" on either side to participate in the distribution, and hence under appellant's construction of the will, if on either side there had been but one who could take, though a father, a brother or a sister, and there had been on the other side thirty or more nephews and nieces the one near relative would be thrown into the one class of the many remote relatives and take only a part equal to that of such remote relative. Such a distribution would be unnatural, unreasonable and unjust, and one in our judgment wholly unintended by the testator.

The construction adopted by the trial court presupposes no uncertainty, of the character indicated, in the mind of the testator when he made the distribution as to which side of the house would be favored thereby. They were each placed on an equality regardless of who or how many were

the individual beneficiaries.  We feel that the construction of the will so adopted is the one intended by the testator; that it is in accord with the usual and ordinary meaning, as well as the etymological definition, of the words employed in making the distribution; that it does no violence to any of the rules of construction applicable in such cases, and is supported by expressions found in many of the cases herein cited and particularly supported by the decisions in the cases of *Young's Appeal, supra; Bassett* v. *Granger, supra; Holbrook* v. *Harrington, supra.*  See, also, *Bisson* v. *West Shore R. Co., supra; Ross* v. *Kiger, supra.*

The judgment of the lower court is therefore affirmed.

Note.—Reported in 103 N. E. 679.  As to the general rules that govern construing of wills, see 129 Am. St. 79.  On the question whether a gift to persons not designated by name but by general description, and as being living at a certain time prior to testator's decease, constitutes a gift to individuals or to a class, see 34 L. R. A. (N. S.) 945.  See, also, under (1, 8, 9, 10) 40 Cyc. 1490; (2) 5 Cyc. 684; (3) 40 Cyc. 1386; (4) 40 Cyc. 1398; (5) 40 Cyc. 1493; (6) 40 Cyc. 1492; (7) 40 Cyc. 1495; (11, 12) 40 Cyc. 1473; (13) 40 Cyc. 1386; (14) 40 Cyc. 1413.