SELMAN v. ROBERTSON.

1. WILLS—LIMITATIONS.—The second clause of the will of R., probated in 1849, reads: "I gave and bequeath to my daughter, Rocinda R. Robertson, for her and the heirs of her body, * * * if, however, my said daughter, R., should die without issue, then the above bequeathed property is to revert back unto my estate, and be equally divided among my surviving legatees." *Held*, that the limitation over to the surviving legatees is not void for remoteness.

2. WILLS—LIMITATIONS.—A limitation over, after a fee conditional, may be supported by way of executory devise; but a limitation over, after a fee conditional, cannot be supported by way of remainder.

3. IBID.—IBID.—A limitation over by way of executory devise, after a fee conditional, to "my surviving legatees," without other words to restrict the meaning, goes to such legatees as survive the first taker.

Before BENET, J., York, spring term, 1895. Reversed.

Action by Ella Selman, Mary Burk, Josie Horn, Mattie A. Horn, and Willie Harrison, against William Robertson, for partition of a tract of land, claiming under will of Thomas A. Robertson, dated August 4, 1847, and probated

August 6, 1849. Judgment for plaintiff. Defendant appeals.

*Messrs. Wilson & Wilson*, for appellant.

*Mr. C. E. Spencer*, contra.

March 20, 1896. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiffs bring this action to recover possession of one undivided fourth part of a tract of land described in the complaint, now in the exclusive possession of the defendant, and claimed by him as his exclusive property.

The facts of the case are undisputed, and as the case turned upon a question of law only, a trial by jury was waived, and the case was heard and determined by his honor, Judge Benet. It appears that the land in controversy formerly belonged to one Thomas Robertson, who, by his will, which was admitted to˙ probate on the 6th of August, 1849, devised the same as follows: "*Second*. I gave and bequeath to my daughter, Rocinda R. Robertson, for her and the heirs of her body, * * * if, however, my said daughter, Rocinda, should die without issue, then the above bequeathed property is to revert back unto my estate, and be equally divided among my surviving legatees."

The testator, after duly executing his will, containing the above copied clause, died, leaving his widow, who subsequently died without having married again, his said daughter, Rocinda, and four sons, Allen, James, Samuel, and the defendant, William. All of these sons, except William, afterwards died—the plaintiffs being the only children and heirs at law of the said Samuel, who left no will. After the death of her three brothers, the said Rocinda died, in 1891, without ever having had any issue, leaving a will in which she undertook to devise the land in controversy to persons other than the plaintiffs.

The defendant claims that he, as the only "surviving legatee" of the testator, is exclusively entitled to the land

in dispute, under the limitation contained in the second clause, while the plaintiffs claim that the limitation over is void for remoteness; or, if not void, that it embraces all of the heirs of the testator who survived him, of whom the plaintiffs constituted a part. The Circuit Judge held that the limitation over was void for remoteness, but even if not, it embraced the plaintiffs. He, therefore, rendered judgment that the plaintiffs were entitled to one undivided fourth of the land in controversy.

From this judgment defendant appeals, upon the several grounds set out in the record, which impute the following errors to the Circuit Judge: 1st. In holding that Rocinda took more than a life estate. 2d. In holding that Rocinda took a fee conditional, and that the limitation over was void for remoteness. 3d. In holding that the words, "my surviving legatees," meant *surviving the testator*, and in not holding that those words meant *surviving Rocinda*.

It is very obvious that the case turns upon the inquiry as to what is the proper construction of the second clause of the will, which is above set out. That inquiry must be pursued in the light of the cardinal rule, that the intention of the testator, as ascertained from the words which he has used, must govern, unless such intention, as thus ascertained, comes in conflict with some settled rule of law which forbids carrying such supposed intention into effect. So that the inquiry, naturally, divides itself into two questions: 1st. What do the words which the testator used, aside from any arbitrary rule of law, show to have been the intention of testator. 2d. Whether the intention as thus disclosed, is in conflict with any settled rule of law, which forbids that it shall be carried into effect. As to the first question, I do not see how it can be doubted, that the words which the testator used show plainly that he intended that the property which he gave to his daughter, Rocinda, should be hers—not for her life only, but for the heirs ʹof her body—as long as she should have such heirs, and in case of her death without issue, that the property given to

her should, in that event, "be equally divided among my surviving legatees." If this be regarded as the intention of the testator, then, Rocinda having died, "without ever having had any issue," the property given to her should, in the event which has happened, go to the "surviving legatees."

But this is not conclusive of the case, for the inquiry still remains, whether the intention of the testator, thus disclosed by the words which he has used, comes in conflict with any settled rule of law which forbids its adoption in the present case. It is contended, first, that the intention thus disclosed cannot be carried into effect, because it comes in conflict with the well settled rule of law against perpetuities. It is freely conceded that, prior to the act of 1853, the general rule was that the words, "die without issue," should be construed as importing a failure of issue at any future indefinite period of time, and hence any limitation over upon the death of the first taker "without issue," would be void for remoteness; and it is likewise conceded that the will in this case, having taken effect prior to the passage of the act of 1853, must be construed under the law as it stood previous to the passage of that act, which effected such a radical change in the construction of the words, "die without issue," or other equivalent words. While the general rule, as above stated, was well settled, the courts were always ready to seize upon any word or phrase found in the will, which would tie up the generality of the expression, "die without issue," so as to carry out the intention of the testator, and at the same time avoid the vice of remoteness. A limitation to survivors was, perhaps, most frequently resorted to for that purpose. In *DeTreville* v. *Ellis*, Bail. Eq., 40, the testator "devised his real and personal estate to his widow and children in different portions, and by one of the clauses thereof provided as follows: 'It is my will and desire that, should any of my children die without lawful heirs of their body, their part or division of my estate shall be equally divided be-

tween the surviving children, share and share alike.'"
*Held*, that the indefinite failure of heirs of the body was
controlled by the limitation to the survivors, and that the
devise over was good both as to the real and the personal
estate. In that case, Nott, J., in delivering the opinion of
the court, after stating the general rule that limitation over,
in case the first taker dies without issue, would be construed
to mean an indefinite failure of issue, and hence void for
remoteness, uses this language: "But where any words are
used, which can be construed into an intention to limit the
failure of issue to the time of the death of the first taker,
the limitation will be supported. And the court will take
advantage of any words that will bear such construction, in
order to carry the intention into offect. The word survivor
has, in many instances, been held sufficient for that pur-
pose," citing the cases. The doctrine laid down in the case
just cited has been approved, and followed in several sub-
sequent cases. *Stevens* v. *Patterson*, Bail. Eq., 40; *Hill* v.
*Hill*, Dud. Eq., 71; *Terry* v. *Brunson*, 1 Rich. Eq., 78;
*Matthis* v. *Hammond*, 6 Rich. Eq., 399; *McCorkle* v. *Black*,
7 Rich. Eq., 407; *Mendenhall* v. *Mower*, 16 S. C., 303. It
is true, that in some of the cases cited the question related
to bequests of personal property, and it is contended that
the rule does not apply to devises of real estate; and in sup-
port of that contention various English cases might be
cited. But, as is shown by Dargan, Ch., in the circuit de-
cree in *McCorkle* v. *Black*, *supra*, which was adopted by
the Court of Appeals, there is no distinction here between
bequests of personal property and devises of real estate, so
far as the question under consideration is concerned. See,
also, what is said by Simpson, C. J., in *Mendenhall* v.
*Mower*, *supra*, at page 309: "Formerly there was a wide
distinction between these two species of property (real and
personal), especially as to the limitations in instruments,
deeds and wills, by which they were transferred and con-
veyed. This distinction, however, growing less and less
marked, as personal property in the course of years rose in

value, as compared to realty, has at length almost passed away, until now the rules governing the construction of limitations as to the two are generally the same." It is needless here to note a distinction taken by Sir Wm. Grant, in *Massey* v. *Hudson*, 2 Merivale, 130, and recognized in several of our own cases, that where the limitation to survivors is accompanied with words indicating an intention that the survivor is to take a *transmissible* interest, that the rule will not apply; for in the case before the court there are no words accompanying the limitation to the "surviving legatees," indicating any such intention. From the foregoing cases it seems clear that the limitation over to the surviving legatees, upon the death of Rocinda without issue, is not void for remoteness.

It is contended, however, that, by the terms of the devise to Rocinda, she took a fee conditional, and that no limitation over after such an estate can be supported, either as a remainder or as an executory devise. Conceding that Rocinda did take a fee conditional, it is quite clear that no limitation over *by way of remainder* could be supported, for the obvious reason that, after a conveyance of the fee, whether conditional or absolute, there is, and can be, no remainder, as the conveyance of the fee carries *the whole* estate, leaving nothing by way of remainder; yet the question still remains, whether such limitation may not be supported as an executory devise. There can be no doubt that a limitation over after an estate in fee simple may be supported as an executory devise, provided that, by the terms of such limitation, the rule against perpetuities is not violated. Indeed, as is said in 1 Jarm., on Wills (Perkins edit.), at page 661: "No species of executory limitation is of such frequent occurrence as those which are limited in defeasance of a prior estate in fee." And in *Bedon* v. *Bedon*, 2 Bail., 231, it is distinctly recognized that there may be a good limitation over, by way of executory devise, after an estate in fee defeasible. If so, no good reason can be suggested why a limitation over after an estate

in fee conditional may not be supported as an executory devise; provided, always, that the terms of the limitation are such as to free it from the vice of remoteness. It is true, that this question, so far as I am informed, has never been decided in this State; and it is equally true, that there is a conflict of opinion on the point. In *Buist* v. *Dawes*, 4 Strob. Eq., at page 48, Dargan, Ch., in his circuit decree, in speaking of this question, uses this language: "Limitations, that are utterly void as contingent remainders, are often held to be valid as executory devises, under certain condi-tions and circumstances. And a fee may be limited upon a fee simple absolute, by way of executory devise; provided, the contingency upon which it is to take effect, or vest, must necessarily occur within the period prescribed by the rule for the prevention of perpetuities. And, were the ques-tion a new one, or were I at liberty to speculate, I might inquire if there were any valid reason why an executory devise may not be created after a fee conditional as after a fee simple, and under the same modifications and restric-tions. But the contrary doctrine is established by a series of decisions in this State, and the question, it appears, is not open for discussion." The learned chancellor then proceeds to cite the cases, establishing, as he supposed, the contrary doctrine; and yet, in that very case, the Court of Appeals thought it advisable that the question, whether there could be a limitation over, by way of executory devise after a fee conditional, should be referred to the Court of Errors, and it was so ordered. This shows, conclusively, that the Equity Court of Appeals did not agree with Dar-gan, Ch., that the question was not open for discussion. Again, in *Barksdale* v. *Gamage*, 3 Rich. Eq., at page 274, the same chancellor (Dargan) reiterates the same view in his circuit decree, but this was manifestly a mere *obiter dic-tum;* for, as the chancellor himself said: "This question does not necessarily arise, and I pass on," and the case was really decided upon the ground that the limitation over was void for remoteness; because, though the limitation over

was to survivors, yet the additional words, "and their issue," showed that the intention of the testator was, not that the survivors should succeed *personally* to the estate, but should take a transmissible interest; and hence, under the distinction taken by Sir William Grant, in *Massey* v. *Hudson*, *supra*, the limitation over to survivors was not sufficient to tie up the generality of the expression, "die without issue," so as to signify a death without issue *living at the time of the death of the first taker.* It will be observed that the opinion expressed by Chancellor Dargan, in his circuit decree, in the case of *Barksdale* v. *Gamage*, that there could be no valid limititation over, by way of executory devise, after an estate in fee conditional was expressed, while that question was still pending in the Court of Errors. But when the question did come before that august tribunal (*Buist* v. *Dawes*, 4 Rich. Eq., 423), it was found unnecessary to decide it, inasmuch as a majority of that court held that the precedent estate was not a fee conditional; and, accordingly, it remained undecided, and has so remained to the present day. In that case, however, Wardlaw, Ch., delivered an able and elaborate opinion, which will be found in 4 Rich. Eq., at page 496, showing conclusively that a limitation over, by way of executory devise, after an estate in fee conditional, may be supported; provided, such limitation over is not void for remoteness. In that conclusion, Johnson, Ch., and Evans and Wardlaw, J. J., unqualifiedly concurred, while none of the other members of the Court of Errors expressed any opinion upon the question. It would be desirable to incorporate the entire opinion of that eminent jurist, Wardlaw, Ch., as it really constitutes the whole argument in support of the conclusion here adopted. But it is too·long for insertion here, and as it.is so easily accessible, it is not really necessary. It will be sufficient to make a single quotation from that opinion:

"It has never been doubted, since the introduction of executory devises, that a fee could be limited by executory devise upon a fee simple absolute, where there was no ob-

jection on the score of remoteness; and it is difficult to find any reason why the same doctrine should not be applied to a fee simple conditional. We have seen that both these classes of fees exhaust the estate, so that no remnant exists for the subject of a remainder; and both equally need the benignant aid of courts, in the interpretation of wills, in giving effect to executory devises. If a fee simple conditional be a less estate than a fee simple absolute, and yet not so reduced as to be a particular estate of freehold, which admits a remainder, there seems to be stronger reason why courts should recognize the *jus disponendi* of testators in creating limitations over upon this estate. Littleton says: 'A man cannot have a more large or greater estate of inheritance than a fee simple.' And Lord Coke, commenting thereon, says: 'This doth extend as well to fees simple, conditional, and qualified, as to fees simple, pure, and absolute. For our author speaks of the ampleness and greatness of the estate, and not of the perdurableness of the same; and he that hath a fee simple, conditional, or qualified, hath as ample and great an estate as he that hath a fee simple absolute; so as the diversity appeareth between the quantity and quality of the estate.' Co. Litt., 18. The prominent distinction between these two classes of fees simple is in the description of the heirs to which the estates respectively descend—one to the heirs general and the other to particular heirs of the body generally, or restricted as to sex and as to the body that shall bear them. This, of course, effects the duration of the estate in the donee and the reverter to the donor, but both are estates in fee simple of the same quantity. All the rules applying to estates in fee are equally applicable to the estate of fee conditional, as to its creation and limitation and the time of its continuance under the limitation, with the exception of the order of its descent and the right of alienation to bar the donor, 2 Preston on Estates, 320. * * * A fee conditional during its continuance is the entire fee simple estate, *Adams* v. *Chaplin*, 1 Hill Ch., 278, and is as fit a subject

for executory devise as a fee absolute." The opinion concludes with these words: "Upon principle and authority, an executory devise may be limited upon a fee simple conditional, if within due time fixed by the rule against perpetuities." The same distinguished chancellor, in the subsequent case of *McCorkle* v. *Black*, 7 Rich. Eq., at page 419, took occasion to reiterate these views, and to notice certain cases which had been previously "inadvertently omitted."

It thus appears that while the question, whether a limitation over, after an estate in fee conditional, by way of executory devise, may not be supported, has never been authoritatively decided, yet the weight of numbers, at least—two chancellors and two law judges against one chancellor—is in favor of such a limitation, if within the time fixed by the rule against perpetuities. It is, also, to be observed that the only chancellor who is distinctly on the record in opposition to that view very plainly intimates, in his decree in *Buist* v. *Dawes*, 4 Strob. Eq., at page 48, that if he could have regarded the question as an open one, he would have adopted a different view. But supposing, as he did, that the question was concluded by the cases which he proceeded to consider, he was forced to adopt a different view. Upon this, it may be remarked that the cases upon which Dargan, Ch., based his conclusion manifestly were not regarded by the Court of Appeals as conclusive of the question, for they referred that question to the Court of Errors. To this may be added, that the cases cited by Dargan, Ch., were either cases in which the question was, whether there could be a valid limitation over after a fee conditional, *by way of remainder*, or were cases in which the limitation over was infected with the vice of remoteness. It is very easy, therefore, to understand why the Court of Appeals did not regard those cases as conclusive of the question whether a limitation over, after a fee conditional, *by way of executory devise*, could be supported, where such limitation over was in such terms as avoided the vice of remoteness.

In the present case the limitation over, after the estate in fee conditional, vested in Rocinda, being to survivors, without any additional words, such as, "and their heirs or issue," or "and their executors and assigns"—indicating an intent to create in such survivors a transmissible interest, escapes the vice of remoteness, as has been shown above; and there is no reason founded either in principle or based upon authority, why such limitation shoulä not be supported as an executory devise.

The only remaining question is, who are meant by the terms, "my surviving legatees," found in the second clause of the will, and used to designate the persons who were to take in the event which has happened—the death of Rocinda without issue. The question is, whether those terms mean the legatees who survived the testator, or do they mean those who survived the first taker, Rocinda, upon whose death without issue these survivors were to take. This question is conclusively answered by the authorities. In 2 Jarm. on Wills, 462 (Perkins edition), the author, after citing and commenting on the cases, says: "In this State, of the recent authorities, one scarcely need hesitate to affirm that the rule which reads, a gift to survivors, simply as applying to objects living at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred; and that where such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and of those only." It is true, that the learned author calls attention to the fact that some of the cases forbid the application of this rule to devises, but he adds that: "It is difficult to discover any ground for making them the subject of a different rule." This rule has been distinctly recognized in this State, and has been applied indiscriminately to cases of real as well as personal estate. See *Evans* v. *Godbold*, 6 Rich. Eq., 26; *Schoppert* v. *Gillam*, 6 Rich. Eq., 83; *Roundtree* v. *Roundtree*, 26 S. C., 450. The case of *Drayton* v. *Drayton*, 1 DeS., 324,

relied on by the Circuit Judge, as well as by counsel for respondents in his argument here, to sustain the view that the period of survivorship must be referred to the death of the testator and not to the death of the first taker, is fully disposed of by the remarks of Nott, J., in *Swinton* v. *Legare*, 2 McC. Ch., at pages 443–4, quoted with approval in *Roundtree* v. *Roundtree, supra*, at page 473. It seems to be contended in the argument here that it is necessary to the operation of this rule that the precedent estate should be *a life estate*. But it is clear that this contention cannot be sustained; for in the above quotation from Jarman, that learned and accurate writer, in stating the rule, expressly says: "Where such gift is preceded by a life *or other prior interest*, it takes effect in favor of those who survive the period of distribution, and of those only." The words italicised in this quotation show very clearly that the rule is not confined to cases where the precedent estate is a life estate, but embraces cases of any other prior interest. So, in the case of *Pressly* v. *Davis*, 7 Rich. Eq., at page 107, Wardlaw, Ch., in stating the rule, says: "If the enjoyment be postponed by the interposition of a particular interest, *such as* a life estate, or by fixing a future period for division, such as the attainment of the legatee to full age, then words of survivorship more naturally relate to the period of division and enjoyment"—showing very clearly that it is not the nature of the preceding estate which gives rise to the rule, but that it grows out of the fact that a future period of distribution is contemplated. And as was said by the same chancellor, in *Ballard* v. *Conners*, 10 Rich. Eq., at page 392: "When the enjoyment of the estate by those ultimately entitled is absolutely postponed to a future day by a supervening estate, it is natural and just to make the chances of survivorship applicable to such future day." He does not say a supervening *life* estate, but *a supervening estate*, which would include an estate other than a life estate. From the foregoing view it must be held that the limitation over to the surviving legatees, upon the death

18—46

of Rocinda without issue, was a valid limitation by way of executory devise; and the defendant being the only survivor at the time of the death of Rocinda, was exclusively entitled to the land in controversy.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.