## CURRY ET AL. *v.* CURRY ET AL.

[No. 8,449.   Filed June 30, 1914.   Rehearing denied December 16, 1914.   Transfer denied April 16, 1915.]

1.  WILLS.—*Devises.*—*Fee.*—The word "heirs" is not necessary to convey a fee, but other words denoting an intention on the part of the testator to pass his entire interest will be sufficient for such purpose in the absence of other language in the will limiting or controlling their operation.   p. 576.

2.  WILLS.—*Construction.*—*Intent.*—The courts should look to the intent of the testator in construing a will, and, in ascertaining such intent they should consider the will in its entirety and if possible give effect to every item and word thereof.   p. 576.

3.  WILLS.—*Construction.*—*Estate Devised.*—Where a testator by a certain item of his will devised the residue of his estate to his son, "subject nevertheless to the following directions, conditions, restrictions and limitations, viz.," and the conditions and restrictions immediately following related to the control of the estate by trustees, and the next succeeding item provided that if said son should never marry, or if he should die without leaving a wife or children surviving so as to inherit from him, certain bequests were to be paid out of the estate so devised to him and the residue should be given to testator's daughter, the court can not say that it was the testator's intention to devise to his son a fee simple absolute in the real estate in controversy   p. 576.

4.  WILLS.—*Construction.*—*Estate Devised.*—Where an estate in fee simple is devised in one clause of a will in clear and decisive terms, and subsequent provisions clearly show an unmistakable intention to give an estate less than a fee simple, the latter intention must control.   p. 578.

5.  WILLS.—*Construction.*—*Quality of Estate.*—Where a testator devised the residue of his estate in trust for the benefit of his son,

with authority to the trustees to turn over the property to the son under certain circumstances before the period fixed in the will and provided that if the son should never marry or should die without a wife or children surviving so as to inherit from him, the residue of the estate so devised to him, after the payment of certain legacies, should go to testator's daughter, the word "residue" as used in the latter provision has reference to the part remaining after the payment of such legacies and not to the residue of the property devised to the son and remaining at his death, and hence such provision does not indicate that testator intended to confer on the son a power of disposition, or to devise to him an absolute fee in the property. pp. 578, 580.

6. WILLS.—*Construction.*—*Quality of Estate.*—Where an estate is given to a person generally, or indefinitely, with power of disposition, it carries a fee; but where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposal, the devisee for life will not take an estate in fee notwithstanding the distinct and naked gift of a power of disposition of the reversion. p. 578.

7. WILLS.—*Construction.*—*Quality of Estate.*—A later disposition of the residue only of property devised to another is some evidence that the testator intended to give the first taker an absolute title with power of disposition. p. 579.

8. WILLS. — *Devises.* — *Quality of Estate.* — *Limitations.* — *Repugnancy.*—Where a testator by one item of his will devises an absolute and unqualified fee in real estate, and by another item attempts to make a gift or devise over of what may remain undisposed of by such first taker at his death, the limitation over is void for repugnancy. p. 579.

9. WILLS.—*Construction.*—*Limitations.*—*Executory Devise.*—While a limitation over by way of remainder after a devise of the fee is void, a limitaton over by way of executory devise will be upheld if by its terms the rule against perpetuities is not violated. p. 580.

10. WILLS. — *Construction.* — *Words of Survivorship.* — Words of survivorship in a will are to be construed as referring to the death of the testator, where the words of the instrument do not clearly show that they refer to a subsequent date. p. 580.

11. WILLS.—*Construction.*—*Devise of Remainder.*—*Vesting of Estate.*—Under a will bequeathing the residue of testator's estate in trust for the benefit of his son, with authority to the trustees to turn over the property to the son under certain circumstances prior to the time fixed in the will, and further providing that if the son should never marry or should die without a wife or children surviving so as to inherit from him, the residue of the estate so devised to him, after the payment of certain legacies, should go to testator's daughter, the vesting of the estate in the daughter

was contingent on the death of the son at any time without a wife or children to inherit from him, and the son acquired a determinable or defeasible fee, with no power of disposition, and the devise to the daughter was a limitation over by way of an executory devise and not as a remainder. p. 581.

From Wells Circuit Court; *H. J. Paulus,* Special Judge.

Action by William A. Curry and others against Charles Curry and others. From an adverse judgment, William A. Curry and others appeal. *Affirmed.*

*Edwin C. Vaughn, Gardner & Jessup, J. A. Hindman, H. S. Thomas, Frank S. Roby* and *Elias D. Salsbury,* for appellants.

*Abram Simmons, Frank C. Dailey, Jacob S. Denney, B. A. Myers* and *Orville Myers,* for appellees.

HOTTEL, J.—This is an action to quiet title to, and for partition of real estate brought by William A. Curry, and numerous other appellants, against Elmira Isenhart *et al.* The complaint is in the usual form and alleges that the plaintiffs and all the defendants except Elmira Isenhart are the owners in fee simple and tenants in common of the real estate described in the complaint, and sets out the respective interests of each of such plaintiffs and defendants except Elmira Isenhart, and as to her, alleges that she claims some interest in such real estate, which claim is unfounded and without right and a cloud upon the title of appellants and the other appellees. In their prayer for relief, appellants ask that they, together with the appellees, other than Elmira Isenhart, be declared the owners in fee simple of said real estate as tenants in common in the respective interests therein set out and that they be decreed partition, etc., and that their title be quieted as against any claims of Elmira Isenhart.

To this complaint, appellees, other than Ellsworth Shively, then of unsound mind, and Elmira Isenhart, filed an answer admitting that their respective interests are correctly stated in the complaint and denying that Elmira Isenhart has any

right, title or interest in and to said real estate and join with appellants in the prayer of their petition. Ellsworth Shively, by guardian *ad litem*, filed an answer, designated a general denial, in which he admitted that the complaint correctly set out the interest of the respective parties in said real estate, but denied that Elmira Isenhart had any interest therein. Elmira Isenhart answered by general denial and also filed a cross-complaint against appellants and all of her coappellees, which is in the usual form to quiet title and in which, as against both plaintiffs and her codefendants, she seeks to quiet title in herself to the same real estate described in the complaint. To this cross-complaint, appellants and appellees, other than Ellsworth Shively and Elmira Isenhart, answered by general denial. Ellsworth Shively by guardian *ad litem* answered by denial in the statutory form.

Upon the issues thus formed, there was a trial by the court and a general finding against appellants on their complaint and for appellee Elmira Isenhart on her cross-complaint. Appellants filed a motion ·for a new trial which was overruled and judgment was rendered on the finding. Appellants perfected a term time appeal and assign as error, the ruling on such motion. The grounds of this motion relied on for reversal are those which charge that the decision of the court is contrary to law and is not sustained by sufficient evidence.

It is admitted that on September —, 1885, Amos Curry was the owner in fee simple of the real estate in question, and that he on that date died·testate; that by his will he disposed of, or attempted to dispose of all his property both real and personal. The title of appellee Elmira Isenhart to the real estate in question, and the judgment of the court herein quieting her title thereto is predicated on such will. It follows that the determination of the questions presented by this appeal depends wholly on the construction to be

placed on such will. Items Nos. 12 and 13 are those on which the controversy turns. They provide as follows:

"Item 12. I do will and bequeath unto my beloved son, David Franklin Curry, all the residue and remainder of my property and estate of every kind and description, both real and personal not hereinbefore specifically devised, subject nevertheless to the following directions, conditions, restrictions and limitations, viz., I will and direct that all the property and estate so devised to my said son, shall at my decease be placed in the possession of and under the sole and absolute control of my friends, David Studabaker, resident of Decatur, Adams County, Ind., and Edwin R. Wilson, of Bluffton, Wells County, Ind., to hold in trust until my said son arrives at the age of forty years, and if they or either of them be not living or shall from any cause fail to accept said trust, then and in that case, I will and direct that the judge of the Wells Circuit Court, shall select and appoint a competent and proper person in the place of said persons above named, with like power to so appoint a successor to said trust, whenever there is a vacancy."

This item then in detail gives directions to such trustees as to the management and control of such estate and the investment of the income derived therefrom, if any, after the payment of expenses for the son as directed, and then further provides as follows:

"Provided, however that if said trustees or their successors shall at any time file their written statement under oath, before the judge of said Wells Circuit Court that they desire to deliver over to my said son any part of said estate, describing the same, and that their request is made because my said son does not use intoxicants of any kind, that as they believe he is thoroughly temperate, of good habits and competent to properly use and manage the same, such judge shall make an order to that effect on the order book of said court either in vacation or term time of said court, and such order shall authorize said trustees to so deliver the estate and property so described to my said son at any time thereafter as they may deem best. I further direct that if my son should at any time marry, his wife

and his children born in lawful wedlock shall also be included in deriving a support proper to their condition in life, from said estate under the same conditions herein provided for my said son. Item 13. I do further will, devise, and direct that if my said son David Franklin Curry shall never marry, or if he shall marry and die without leaving a wife or children him surviving, so as to inherit from him, then and in that case it is my will and bequest that ten thousand dollars of the property and estate hereinbefore devised to my said son shall be equally divided between said Philo Rogers and said Mary Studabaker, share and share alike, and the residue thereof shall be given to Elmira Isenhart, wife of John Isenhart, who now lives near Fort Recovery, State of Ohio.''

We will indicate briefly and in a general way the provisions of the other items. Item No. 1 provides for payment of debts. Item No. 2 gives to the testator's wife the home residence and appurtenant buildings, furniture, fittings, etc. Item No. 3 gives the wife a horse and carriage. Items Nos. 4 and 5 give her a life estate in certain real estate which is a part of the real estate in controversy. Item No. 6 gives the wife $8,000 in money. Item No. 7 gives testator's niece Mary Studabaker and her children forever, 140 acres of land. Item No. 8 gives such niece $800 in money. Item No. 9 is a request of the wife that she permit said niece to continue to live with her, during the life of the wife, provided the niece remains a *feme sole*. Item No. 10 gives to Philo Rogers $500, in addition to what he had already given him, and to Hannah Warner $500 provided she remained with him and his wife until his decease. Item No. 11 provides for using $2,000 of his life insurance money to purchase· a suitable monument. Item No. 14 provides for his executors to furnish bond. Item No. 15 names certain persons as his executors. In this connection, it should be stated that it appears from the agreement of parties and the evidence that, on March 31, 1893, David Studabaker and Hugh Dougherty, trustees of the estate of David F. Curry, filed a petition in which they showed to the court that the estate

of Amos Curry had been settled by the administrator with the will annexed, etc.; that David F. was then thoroughly temperate, of good habits, and not addicted to the use of intoxicants and was competent to use and manage his own estate properly, and asked an order of the court authorizing them to turn such property over to him. On this petition, an order of the court was made authorizing said property to be so turned over, which was done, and David F. thereafter, until his death, retained possession and control of said property. David F. survived his mother and died intestate September 16, 1910. The widow of Amos Curry had no children born to her after her husband's death and never remarried. Elmira Isenhart filed in the Wells Circuit Court in the case of the estate of Amos Curry, deceased, her petition in which she showed the provisions of item No. 13 of his will, the settlement of his estate by the administrator with the will annexed, the death of David F.; that she was the Elmira Isenhart referred to in item No. 13 of such will, and asked an order of court authorizing her to pay to the clerk of said court the $10,000 as provided in said will for the use of Philo Rogers and Mary Studabaker, and that she be permitted to take the receipt of such clerk as evidence of such payments, etc. The prayer of this petition was granted and Elmira Isenhart paid to the clerk of said court $5,000 for the use and benefit of Mary Studabaker and $5,000 for the use and benefit of Philo Rogers, in discharge of the legacies provided for under said will. Pursuant to a petition filed by them in the estate of Amos Curry, deceased, the heirs of Philo Rogers, were authorized to draw and the clerk of said court ordered to pay to them the sum of $5,000 paid in by Elmira Esenhart. A like order directing the clerk to pay a like amount to Mary Studabaker Weicking was also made by the court on a like petition filed by her. It further appears that David F. Curry was the only legitimate child of Amos Curry; that Philo Rogers was not a relative but was reared in his home, and at the

time of the execution of the will was a man of a family; that Mary Studabaker, a neice, had been a member of his family from childhood; that Hannah Warner was not a relative but had been in the Curry home for some time; that appellee Elmira Isenhart was the illegitimate child of the testator; that prior to her marriage she never lived in his home; that shortly after her marriage, testator sent her his picture and later visited her at her home in Fort Recovery, Ohio; that later she and her husband lived with her father in his home for about three months, and then moved in adjoining property where she lived for another three months.

It is contended by appellants, (1) that Amos Curry, deceased, by item No. 12 of his will intended to and did vest in his son David F. Curry an absolute fee simple title to all the estate both real and personal not theretofore bequeathed and devised to his wife, and to Mary Studabaker, Philo Rogers and Hannah Warner; that such devise is expressed in apt words of a fixed legal significance, and that the testator, having intentionally clothed the object of his bounty with a complete and absolute title, could not defeat such dominant purpose and intent so expressed in his will by subjoining thereto another clause or item containing inconsistent and contradictory provisions; (2) that no property bequeathed and devised by item No. 12 to David F. Curry, vested in the appellee, Elmira Isenhart, under the provisions of item No. 13, for the reason that the death of David F. Curry without children referred to in said item, refers to a death without children during the lifetime of the testator; (3) any construction placed on item No. 13, which would tend to result in casting an estate over to appellee Elmira Isenhart, is inconsistent with the absolute estate in fee simple vested in David F. Curry by item No. 12 and would render item No. 13 void; and (4) that if construed as an executory devise, item No. 13 is void because the limitation is inconsistent with the absolute estate expressly given to David F. Curry or necessarily implied.

On the other hand, appellee contends that item No. 12 did not give a fee simple interest to said David F. Curry; that, in considering the effect of this item, it must be construed in connection with all the items of the will and especially in connection with items Nos. 13 and 14; that the words "subject, nevertheless, to the following directions, conditions, restrictions and limitations", as found in item No. 12 continue through each of said items; and that the death of David F. without children as expressed in said item No. 12 refers to a death at any time.

We feel that it is due to counsel for appellants and appellee that we should acknowledge the material aid which their respective briefs have furnished us in our consideration of their respective contentions. Many authorities are therein collected and quoted from, and this research and labor on their part has materially lessened that of the court.

It will be observed that appellant's contention in the main is based on the assumption that Amos Curry, deceased, by item No. 12 of his will, devised to his son David F. a fee simple interest absolute in all of his property both real and personal, subject only to the provision for its management by trustees, as expressed in the same item. As supporting and authorizing this assumption, appellants cite §3123 Burns 1914, §2567 R. S. 1881, which provides in effect, that "Every devise in terms denoting the testator's intention to devise his entire interest in all his real or personal property, shall be construed to pass all of the estate in such property, * * * which he was entitled to devise at his death. * * * " Assuming that such item No. 12 devises to the testator's son David F. a fee simple absolute in the real estate in controversy, appellants rely on and cite numerous authorities to the effect, that a devise in fee, clearly and distinctly made or necessarily implied, can not be cut down or modified by a subsequent provision which does not clearly and distinctly manifest an intention on the part of the testator to limit such devise, and that, if item No. 13 of such

will is to be construed as an attempt on the part of the testator to limit the absolute devise made in item No. 12, it is void because repugnant thereto. As supporting such contention appellants cite, *Mulvane* v. *Rule* (1896), 146 Ind. 476, 481, 45 N. E. 659, and authorities cited; *Fowler* v. *Duhme* (1896), 143 Ind. 248, 260, 42 N. E. 623, and authorities cited; *Mitchell* v. *Mitchell* (1895), 143 Ind. 113, 116, 42 N. E. 465; *Snodgrass* v. *Brandenburg* (1905), 164 Ind. 59, 71 N. E. 137, 72 N. E. 1030, and the cases there cited. It is true, as appellants, in effect, contend, that the word "heirs" is not necessary to convey a fee, and that other words denoting an intention on the part of the testator to pass his entire interest, such as the words here used in item No. 12 may be sufficient for such purpose, yet, such words are effective to convey such a title only when "there is nothing in the other parts of the will to limit or control the operation of the words." 4 Kent, Comm. (14th ed.) *535, *et seq.* See, also, *Smith* v. *Meiser* (1875), 51 Ind. 419, 422; *Fenstermaker* v. *Holman* (1902), 158 Ind. 71, 74, 62 N. E. 699.

The intent of the testator is recognized by all the authorities as being the polar star to which the courts must always look in construing a will. *Laisure* v. *Richards* (1914), 56 Ind. App. 301, 103 N. E. 679; *Pate* v. *Bushong* (1903), 161 Ind. 533, 537, 69 N. E. 291, 100 Am. St. 287, 63 L. R. A. 593; *Fenstermaker* v. *Holman, supra; Moore* v. *Gary* (1897), 149 Ind. 51, 57, 48 N. E. 630; *Calvin* v. *Springer* (1902), 28 Ind. App. 443, 446, 63 N. E. 40; *Smith* v. *Meiser, supra.* In ascertaining this intent, the court should consider the will in its entirety and if possible give effect to every item and word thereof. See authorities last cited, *supra.* The words "I do will and bequeath unto my beloved son David Franklin Curry all the residue and remainder of my property and estate of every kind and description both real and personal not hereinbefore specifically devised", found in item No.

12 of this will and relied on by appellants as devising a fee simple estate in the real estate in question, while they contain no legal words of inheritance and do not in express terms devise a fee simple title, yet, standing alone, unqualified and in no way restricted or limited by other words or items of the will, would doubtless be sufficient to convey such an estate. *Mulvane* v. *Rude, supra; Wiley* v. *Gregory* (1893), 135 Ind. 647, 45 N. E. 507; *Rogers* v. *Winklespleck* (1896), 143 Ind. 373, 42 N. E. 746, and cases cited; *Logan* v. *Sills* (1902), 28 Ind. App. 170, 62 N. E. 459, and cases cited.; *Ide* v. *Ide* (1809), 5 Mass. 500. The testator, however, saw fit to expressly qualify and limit said words by immediately following them with the words: "subject nevertheless to the following directions, conditions, restrictions and limitations, viz." Item No. 12 then sets out certain directions as to the management of said estate and restrictions in the matter of the control of said estate by trustees; but, in this item, no limitation or condition is imposed on the estate so devised. It is very earnestly insisted by appellants that, inasmuch as said words of limitation are followed by "viz.", we must look solely to the item in which they are found, to ascertain the limitation and condition subjoined to the estate so created and that, as there is no limitation or condition found in such item, we must conclude that the testator intended to devise to his son a fee simple absolute in such property. It is no doubt true, as appellants contend, that the strict rule of construction which ordinarily controls in construing a sentence would require us to look to item No. 12 alone for the limitation and condition intended to be subjoined to such devise, but the fact that no such limitation or condition is found in such item, instead of being conclusive that none was intended, rather furnishes a reason to look to what follows for the condition or limitation intended. In this connection, we may add that the last clause of item No. 12 and the first clause of

item No. 13 evidences a continuity of thought and purpose in the mind of the testator, strongly tending to show that in item No. 13, he was only proceeding with the directions, conditions, restrictions and limitations which in the previous item he had indicated would follow, the change being merely from one of directions to one of conditions and limitations. But, whether the language of items Nos. 12 and 13 is such as to require the provisions of the latter to be treated as the limitations and conditions referred to in the former, is not necessarily of controlling influence, because the general rule, applicable to the construction of wills, which requires us to look to each item of the will to ascertain the intent of the testator, will not permit us to ignore item No. 13 and, when this item is read in connection with item No. 12, we are unable to say that the testator intended to devise to his son, a fee simple absolute in the real estate in controversy. In connection with the rule insisted on by appellants, we must not ignore another rule equally well settled, viz., "that where an estate otherwise an estate in fee simple is devised in one clause of a will in clear and decisive terms, and the subsequent provisions clearly and distinctly show an unmistakable intention upon the part of the testator to give an estate less than a fee simple, such later intention must control." *Hayes* v. *Martz* (1910), 173 Ind. 279, 287, 89 N. E. 303, 90 N. E. 309, and cases cited. However, it is insisted by appellants in effect that the limitation over contained in item No. 12 is not of the entire property given to David F. Curry, but that such limitation is of the residue of such property that may exist at his death, and that having given the first taker the entire estate the testator had no residue remaining to devise by item No. 13, and that such devise is therefore void for repugnancy. It is true, as appellants contend, that the rule is thoroughly established by the decided cases that, "where an estate is given to a person generally, or indefinitely, with a power of dis-

position, it carries a fee; and the only exception to the rule
is, where the testator gives to the first taker an estate for
life only, by certain and express words, and annexes to it
a power of disposal. In that particular and special case, the
devisee for life will not take an estate in fee, notwithstand-
ing the distinct and naked gift of a power of disposition of
the reversion.'' *Jackson* v. *Robins* (1819), 16 Johns. *537,
*587. See, also, *Hall* v. *Grand Lodge, etc.* (1914), 55 Ind.
App. 324, 103 N. E. 854, and cases cited; *Cameron* v. *Parish*
(1900), 155 Ind. 329, 336, 57 N. E. 547; *Mulvane* v. *Rude,
supra; and cases cited; Logan* v. *Sills, supra; Benninghoff*
v. *Evangelical Assn. Church* (1902), 28 Ind. App. 374, 378,
61 N. E. 952; *Ide* v. *Ide, supra.* Appellants' conten-
7. tion that a later disposition of the *residue only* of
property devised to the first taker is some . evidence
that such testator intended to give the first taker an absolute
title with power of disposition is also supported by au-
thority. *Wiley* v. *Gregory, supra; Ide* v. *Ide, supra; Mul-
vane* v. *Rude, supra; Howard* v. *Carusi* (1884), 109 U. S.
725, 3 Sup. Ct. 375, 27 L. Ed. 1089; *Wilson* v. *Turner*
(1897), 164 Ill. 398, 45 N. E. 820; 2 Williams, Executors
and Administrators (7th Am. ed.) 831; *McKenzie's Appeal*
(1874), 41 Conn. 607, 19 Am. Rep. 525; *Rona* v. *Neier*
(1878), 47 Iowa 607, 29 Am. Rep. 493.

It is also true that where a testator by one item of his
will gives to a legatee an absolute and unqualified fee in real
estate and by another item attempts to make a gift
-8. or devise over of what may remain undisposed of
by such first taker at his death, that such limitation
over will be held void for repugnancy. This is necessarily
so, because where such testator, by one item of his will,
devises to a first taker an absolute estate in fee, he has no
estate left after the vesting of such precedent estate, out
of which to carve a remainder. *Outland* v. *Bower* (1888),
115 Ind. 150, 17 N. E. 281, 7 Am. St. 420; *Mulvane* v. *Rude,
supra; Ide* v. *Ide, supra; Dumrell* v. *Hartt* (1884), 137

Mass. 218. The authorities, however, seem to recognize a distinction between a limitation over by way of remainder and a limitation over by way of executory devise. The former will not be upheld while the latter will be, provided that by the terms of such limitation over the rule against perpetuities is not violated. See *Selman* v. *Robertson* (1895), 46 S. C. 262, 24 S. E. 187, and authorities cited. Appellants are correct in their legal proposition, but make their mistake in assuming the the word ''residue'' as used in item No. 13 refers to the residue of the property devised to David F. remaining undisposed of at his death. Such item purports to devise all the property devised to David F., and the residue referred to therein relates to the part remaining after paying the $10,000 bequest provided for in such item. In our judgment, this provision of the will furnishes no evidence that the testator by said item No. 12 had intended to confer on the first taker the power of disposition, and hence no evidence that by such item the testator intended to devise to his son David F. a fee absolute in said property.

We next inquire whether appellants are correct in their second contention, *supra*. There can be no doubt but that the law favors an interpretation which will permit estates to vest at the earliest possible moment, and to that end, words of survivorship in a will are construed as referring to the death of the testator in all cases where the words of the instrument are not such as clearly show that they refer to a subsequent date. *Campbell* v. *Bradford* (1906), 166 Ind. 451, 77 N. E. 849. It is insisted by appellees that this rule is a technical one, applied only in cases where a fee simple absolute is given to the first taker, and that it is also limited to wills in which no contingency is provided for, that is to say, that when the death of the first taker is coupled with other circumstances which may or may not take place such as death under age, death without leaving a wife, etc., that the rule has no applica-

tion, and that the devise over takes effect according to the literal and ordinary meaning of the words, viz., upon death under the contingency indicated at any time, whether before or after the death of the testator. The language of some of the cases lends some support to this contention (*Britton* v. *Thornton* [1884], 112 U. S. 526, 532, 533, 5 Sup. Ct. 291, 28 L. Ed. 816; *Summers* v. *Smith* [1889], 127 Ill. 645, 649, 21 N. E. 191; *Durfee* v. *MacNeil* [1898], 58 Ohio St. 238, 50 N. E. 721; *Selman* v. *Robertson, supra;* *Keiley* v. *Fowler* [1768], Wilmot's Notes 321; *Mead* v. *Maben* [1892], 131 N. Y. 255, 30 N. E. 98; *Vanderzee* v. *Slingerland* [1886], 103 N. Y. 47, 53, 8 N. E. 247, 57 Am. Rep. 701; *Collins* v. *Collins* [1902], 116 Iowa 703, 88 N. W. 1097; *Moore* v. *Gary* [1897], 149 Ind. 51, 56, 48 N. E. 630, and cases cited; *Corey* v. *Springer* [1894], 138 Ind. 506, 510, 37 N. E. 322), but this we need not and do not decide. It is sufficient to say that such rule is one of construction only and like other similar rules has application only when the testator, by the language of his will, has left his intent doubtful and uncertain. The purpose of the rule is to effectuate the intent of the testator and not to thwart it or to give excuse to the court to substitute its intent. As affecting the influence to be given to this rule in ascertaining the intent of the testator, one authority very aptly says: "The truth is, these words, 'dying without issue' are condemned by the law to be surly, rigid, inflexible and immovable, when they are alone; but if they can once be got into sensible company, they lose their gloomy, dogmatical, arbitrary disposition and both speak and act as the rest of the company do." *Keiley* v. *Fowler, supra.*

When we examine this will in its entirety, we find many provisions of the will indicating that the testator, by the language employed in said item No. 13, did not mean the death of David F. Curry before the death of the testator; but, that, on the contrary, he meant the

death of David F. Curry at any time, with the qualification, of course, that such death should be without leaving a wife or children. Among such provisions are the following: The expression "never marry" found in item No. 13 is inconsistent with the notion that the testator had in mind the death of his son during his life, but is consistent with the notion that he had in mind the death of his son at any time. The same is true with the words, "without leaving a wife or children him surviving *so as to inherit from him.*" Such wife or children could not inherit the property devised to the son, (which was the property being disposed of by the testator and hence necessarily in his mind when he used these words) except that he, the testator, died first and the property passed from him to the son. On this last proposition see, *Chapman* v. *Moulton* (1896), 8 App. Div. 64, 40 N. Y. Supp. 408; *Jordan* v. *Hinkle* (1900), 111 Iowa 43, 82 N. W. 426; *Citizens' Loan, etc., Co.* v. *Herron* (    ), — Ind. App. —, 103 N. E. 1092. The provisions of item No. 12 relating to the wife and children indicate that the testator had in mind that his son would survive him, and he therefore provided that his wife and children should be included in the provision for support, etc., under such item. The management and control of the property of the son would not pass to the trustees under the will until the death of the testator, and if appellants be correct in their contention, the provision in item No. 12 for the wife and children, according to such contention, immediately on the death of the son, would be entitled to take the property so devised to such son. Other provisions of the will which we need not set out seem also to indicate a similar intent.

We do not deem it necessary to consider the other contentions of appellants above indicated, as what we have already said applies to them also. We might take up the numerous cases cited and relied on by appellants, many of which give some support to their respective contentions, and try to distinguish them from those which lend support to

the conclusion which we have reached, but to do so would extend this opinion to an unreasonable length and, as was recently stated by this court "would only emphasize the appropriateness and truth of the statement of the court in *Wood* v. *Bullard* (1890), 151 Mass. 324, 333, 25 N. E. 67, 7 L. R. A. 304, that: 'The reasoning of the cases is often very refined and subtle, and involves a consideration of minute differences of language; and the final determination of each case must after all, *depend upon the intention to be gathered from all of the language used by the particular testator whose will is before the court.*' (Our italics.)" *Laisure* v. *Richards, supra.*

Taking this will in its entirety, it is apparent that the testator, when making it, had in mind as the objects of his bounty, six persons only, viz., his wife, his niece, Mary Studabaker, Philo Rogers, Hannah Warner, his legitimate child, David F., and his illegitimate child, the appellee. These persons alone were mentioned in the will. In items preceding Nos. 12 and 13 he had provided for all of these persons, except his son and appellee. There certainly can be no doubt that in the preparation or dictation of items Nos. 12 and 13 the testator, then had in mind both, the legitimate and the illegitimate child. To hold otherwise is to ignore entirely the provisions of item No. 13. It seems equally clear to us that these items, when read together and when considered in connection with the other items of the will, make certain that it was the desire of the testator that his son David F. should have a fee in the real estate in question, subject to the condition that if he should die at any time "without leaving a wife or children him surviving so as to inherit from him", then and in that case such fee of the son was to terminate or be divested in favor of appellee, subject to the legacies provided for in said item No. 13. In other words, such son was given a determinable or defeasible fee in such real estate under which he had the right of its use during life, but with no power of disposition,

such defeasible fee to be defeated or divested in favor of appellee by the death of such son at any time without leaving a wife or children surviving him; the devise under which appellee takes being a limitation over by way of an executory devise and not as a remainder. While such devises are not favorites of the law they are recognized and upheld by the authorities where, as in this case,, the will of the testator makes clear his intent in such respect. Judgment affirmed.

NOTE.—Reported in 105 N. E. 951. Estate created by grant or devise of life estate with absolute power of disposition, see 9 Ann. Cas. 947; Ann. Cas. 1912 B 424. Cutting down clear devise or bequest by clauses or expressions of doubtful import, see 3 Ann. Cas. 615; 10 Ann. Cas. 176; 11 Ann. Cas. 470. Rule that wills are to be construed more liberally than deeds, see Ann. Cas. 1913 E 1286. See, also, under (1) 40 Cyc. 1575; (2) 40 Cyc. 1413; (3) 40 Cyc. 1584; (4) 40 Cyc. 1417; .(5) 31 Cyc. 1045; 40 Cyc. 1564; (6) 40 Cyc. 1580, 1629; (7) 40 Cyc. 1413; (8) 40 Cyc. 1585; (9) 40 Cyc. 1641; (10) 40 Cyc. 1511; (11) 40 Cyc. 1591.