17581

W. M. CROFT, Individually, and as Executor and Trustee of the Last Will and Testament of Daniel McKie, Respondent, v.
D. R. McKIE et al., Appellants

(111 S. E. (2d) 210)

*O. Lee White, Esq.,* of Atlanta, Georgia, *for Appellants,*

*Messrs. Buzhardt & Baggett,* of McCormick, *Grier, McDonald, Todd, Burns & Bradford,* of Greenwood, and *Williams & Busbee,* of Aiken, *for Respondent,*

. *O. Lee White, Esq.,* of Atlanta, Georgia, *for Appellants, in Reply,* 

November 10, 1959.

OXNER, Justice.

In this action to quiet title to a tract of land in McCormick County, the Court is called upon to construe the will of Dr. Thomas J. McKie who died in 1898, leaving a large estate which included considerable land then situate in Edgefield County but now a part of McCormick County. He left surviving a widow, Mrs. Margaret L. McKie, and seven children, namely, James, Martha, Josias, Mary, Daniel, Margaret and Lucile.

Uuder his will, which was executed about two weeks prior to his death, his entire estate was given to his widow "for and during the term of her natural life, or widowhood, provided she does not elect to allow an earlier division." Subject to this life estate, each of the seven children was given, in addition to certain specified personal property, a tract of land for his or her "sole and separate use." It was further provided that if any of the children should die childless, "her or their share shall revert to my estate for division among the survivors." Substantially the same provision was incorporated in another portion of the will in the following language: "It is my will and desire that in case of the death of any one of these my before mentioned children without lawful issue of his or her body the bequests herein made shall revert to my estate for division among the survivors."

The property involved in this suit to quiet title, a tract of about 700 acres, constitutes a part of the land devised to the son Daniel McKie. The storm center of this controversy is the meaning of the word "survivors" as used in the foregoing provisions.

The widow of the testator died in 1912. All the children are now dead except Lucile (Mrs. Lucile Mason).* James died childless in 1915. Martha died childless in 1924. Josias died in 1926 leaving a number of children. Mary died childless in 1951. Daniel died childless in 1957. The record does not disclose the exact date of the death of Margaret, who also never had any children, but it was agreed that she died some time after 1947. Of the children who died childless, only Daniel and Margaret ever married. It will thus be seen that of the seven children of the testator, five died without ever having any issue of their body. Lucile (Mrs. Lucile McKie Mason), the only child of the testator living when this action was brought, had two children, Thomas Mason and James L. Mason. Thomas is dead. The grandchildren of the testator are, therefore, the sons and daughters of Josias, and James L. Mason, son of Mrs. Lucile Mason.

In 1900, about two years after the death of the testator, the interest of the widow was terminated by agreement, she having elected an earlier division of the land as contemplated by the will, and each child entered into possession of the land devised to him or her. In 1947 Margaret, Mary, Lucile and Daniel, who then constituted all the surviving children of the testator, sought through a mutual exchange of deeds to partition certain lands formerly belonging to the testator and to that end each was given a deed from the other three wherein the grantors conveyed to the grantee all their interest in the lands allotted to the grantee. In accordance with this agreement, Margaret, Mary and Lucile conveyed, with special warranty, to Daniel McKie all of their interest in and to several tracts of land, including the

---

* We have been informed by counsel for appellants that Mrs. Lucile Mason has died since this case was argued.

one involved in this controversy. Thomas Mason and James L. Mason, sons of Mrs. Lucile Mason, joined in this conveyance.

Daniel McKie who, as previously pointed out, died in 1957, left a will wherein he named respondent W. M. Croft as executor and bequeathed and devised to him his entire estate in trust for the support and maintenance of his (Daniel McKie's) widow, with remainder, if any, to the said W. M. Croft, individually. Respondent was given full power in his discretion to sell any of the property so devised at public or private sale on such terms and at such price as he saw fit.

Respondent claims that under the will and through estoppel created by the quitclaim deed executed in 1947, Daniel McKie acquired good title to the land in controversy and that he, as executor and trustee of his will, is empowered to convey same. The children of Josias M. McKie denied in their answer that the respondent owned any interest in the property and asked that they be declared the owners thereof or in any event as having an interest therein. Lucile McKie Mason and her son, James L. Mason, filed an answer claiming that the title to the land was vested in them alone.

The Court below concluded that under the terms of the will each child acquired a "fee-simple defeasible estate" to the lands devised and upon a child dying without issue, his or her tract passed to the then living children of the testator, who took by executory devise an equal interest in the lands of such brother or sister dying childless; that the word "survivors" as used in the will did not include grandchildren and, therefore, the child or children of any predeceased child would not take; that prior to the happening of the contingency of a child dying without issue, the interest of the brothers and sisters by way of executory devise was not transmissible but that a deed executed by them would operate as an estoppel to assert any title thereafter acquired. It was accordingly held that upon the execution of the quitclaim deed in 1947, Daniel McKie acquired good title to the

land in controversy, which upon his death passed under his will to respondent.

Mrs. Lucile McKie Mason and James L. Mason did not appeal from the foregoing decree. The sole appellants are the children of Josias M. McKie who, of course, are the grandchildren of the testator. Their exceptions are so prolix, general and indefinite, that we have encountered great difficulty in determining what construction they seek to place upon the will. Apparently from the briefs appellants contend: (1) That each of the children of the testator acquired only a life estate; (2) that upon the death of a child without issue, the property devised to him reverted to the estate of the testator for distribution among the latter's heirs at law according to the statute of distributions; (3) that the word "survivor" as used in the will includes the child or children of any predeceased child; and (4) that those who take as survivors are to be ascertained as of the date of the death of the testator and not upon the happening of the event of a child dying without issue. Notwithstanding our uncertainty as to the precise questions sought to be raised by the exceptions, we shall endeavor to determine whether appellants have any interest in the land devised to Daniel McKie.

In a will words of inheritance are not necessary to support a fee. The estate given to each of the children was not merely a life estate but an absolute estate defeasible on the contingency of the death of such child without issue. *Lowry v. O'Bryan,* 4 Rich. Eq. 262. There is no basis for the claim of intestacy. It is equally clear that the word "survivors" should not be construed as meaning those who survived the testator but those who survived a child dying without issue. *Barber v. Crawford,* 85 S. C. 54, 67 S. E. 7; *Selman v. Robertson,* 46 S. C. 262, 24 S. E. 187; *Jones v. Holland,* 223 S. C. 500, 77 S. E. (2d) 202.

We now turn to what we conceive to be the real question in the case, namely, whether the word "survivors" includes the lineal descendants of any predeceased child. More

concretely, it is this: Upon the death of Daniel McKie, childless, did the lands devised to him pass to the other children of the testator then living or did appellants, children of Josias McKie, acquire the interest which their father would have acquired had he been living at the death of Daniel McKie?

Unless there is something in the context of the instrument or attendant circumstances showing a different intention, the authorities are generally to the effect that the word "survivor" should be given its literal interpretation as meaning one who outlives another, one of two or more persons who live after the other or others have died. We quote from some of them.

"To survive another is to outlive such other. * * * A gift to survivors, after a life estate, enures only to those who are alive at distribution. The word 'survivors', when used of a class, is limited to the individuals of such a class, and does not include their children." 3 Page on Wills, 174, Section 1037.

"The primary and literal meaning of the word 'survive' is to outlive another person or live beyond a designated date or the happening of a designated event, and the literal meaning of 'survivor' is one who so outlives another person, etc. It is generally held that in the absence of an expression of a contrary intention, their primary meaning is to be attributed to the words in question, when they are used in wills. Under some circumstances the English courts uphold a construction of the term 'survivor' to mean 'other', but American judges have been very reluctant to countenance this reading of the word." 57 American Jurisprudence, Section 1396, page 931.

"The word 'survivor' will usually exclude representatives so that the last survivor of a class will take the whole share of one dying although others of the class have all died leaving issue." Shouler on Wills, Executors and Administrators, Sixth Edition, Volume 2, Section 1060.

"In the absence of any contrary intention shown by the will, the terms 'surviving,' 'survivors,' and the like, used in provisions for gifts over of the share of legacy of a deceased beneficiary or the remainder thereof, are generally given their literal meaning so as to apply to those designated beneficiaries or members of the designated class who outlive such deceased beneficiary and so as not to include children or issue of a beneficiary who predeceased such deceased beneficiary, the distribution of whose share of the remainder thereof is in question, and, in accordance with this view, the propriety of refusing to construe such terms of survivorship as 'other' or 'others' has been recognized." 96 C. J. S. Wills § 732.

We find nothing in this will justifying a construction of the word "survivors" different from the meaning ordinarily given such word. The testator seemed to be concerned solely with his wife and children. There is no reference to any grandchild. He does not say that in the event of a child dying childless the property devised to him shall be divided among "my survivors". There is no substitutional devise for a deceased child. We have held that ordinarily a devise to children will not be construed as including grandchildren. *Jones v. Holland, supra,* 223 S. C. 500, 77 S. E. (2d) 202. We think the clear intention of the testator was that upon the death of a child without issue the property devised to him was to be divided among his brothers and sisters then living.

*Lowry v. O'Bryan, supra,* 4 Rich. Eq. 262, fully supports the foregoing conclusion. In that case the testator left his residuary estate to four sons—William, George, Robert and Charles—to be equally divided among them, and further provided that 'if either of my sons should die without issue, his part shall be equally divided between the survivors." George and Robert died without issue and upon the death of each his share was divided among the surviving brothers. Thereafter William died leaving two children. Charles was the last to die. Upon his death without issue, claim was

made by the estate of William to a share of Charles' estate. The case was heard on circuit by Chancellor Dunkin, who also wrote the opinion on appeal. On circuit he said with reference to the interest of William: "His interest in the share allotted to his brother Charles, depended on two contingencies, to wit: That he should die without issue, and that he, William, should survive him. But William was in his grave more than thirty years before the death of Charles and consequently could take nothing in the character of survivor. This is an end of complainant's claim." On appeal, Chancellor Dunkin said: "None are entitled but those who can bring themselves within the description at the happening of the contingency. Neither the complainant nor any one else, answered the description at the death of Charles Brown, who was the last surviving brother."

It follows from the foregoing that appellants, whose father died thirty-one years before Daniel, have no interest in the property devised to the latter. This conclusion ends the controversy so far as appellants are concerned. We need not pass upon the other questions decided by the Court below as they affect only the grantors in the 1947 deed under whom appellants have made no claim.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.